FRED R. JANES V. CITIZENS BANK OF NORTH ENID.

(Filed Feb. 8, 1900.)

1. NEGOTIABLE INSTRUMENT—*Terms of—Evidence.* As a general rule, extrinsic testimony is not admissable to explain or vary the terms of a negotiable instrument, but this general rule is subject to the reasonable exception, that where anything appears on the face of the instrument which suggests a doubt or ambiguity as to the party bound, or the character in which any of the persons who signed the instrument acted, parol testimony is admissible as between the original parties, for the purpose of showing the true intent and meaning of the parties.

2. PROMISSORY NOTE—*Execution of by Corporation—Parol Proof—Rule Applied.* The note sued on by the Citizens Bank of North Enid, the payee thereof, is in the following form:

"$500.00    NORTH ENID, O. T., May 23, 1894.

"For value received, sixty days after date, we, or either of us, promise to pay to the order of the Citizens Bank, North Enid, Oklahoma Territory, Five hundred and 00-100 dollars. Appraisement waived or not, at the option of the holder, payable at the Citizens Bank, North Enid, Oklahoma.

. "If not paid when due, this note will draw interest at the rate of twelve per cent. per annum from this date, payable annually. If the interest is not paid when due, to become as principal, and bear the same rate of interest. We, the makers. and indorsers, severally waive presentment for payment, protest and notice of protest, and non-payment of this note.

"We, the sureties, guarantors and indorsers hereon, agree to extension of this note without notice, hereby ratifying such extension, and binding ourselves for payment thereof, as if no extension of time for, or forebearance of payment had been granted or made. In case of legal proceedings to collect this note agree to pay ten per cent. additional to the amount as attorney's fees.

"R. W. PATTERSON,
"JACOB GUTHRIE,
"President of Enid Town Co.
' FRED R. JANES,
"Secretary, The Enid Town Co."

*Held,* that parol testimony is admissible to show that the defend-

ant, Fred R. Janes, signed the note  in his official capacity as
secretary of the Enid Town Company, and that it was understood
between the parties at the time that he was to bind the corporation
which he represented, and not himself individually.

3. SAME—*Former Rule Overruled.* The rule, as stated in the case of
*Keokuk Falls Improvement Company v. Kingsland and Douglas Manu-
facturing Company,* 5 Okla. 32, is hereby overruled.

(Syllabus by the Court.)

*Error  from  the  District  Court  of.  Garfield  County;
before John L. McAtee, District Judge.*

*George P. Rush,* for plaintiff in error.

*John I. Dille, C. O. Blake* and *E. E. Blake,* for defendant
in error.

### STATEMENT OF THE CASE.

This was an action brought in the district court of
Garfield county, on the 26th day of June, 1895, by the
Citizens Bank of North Enid, aaginst R. W. Patterson.
Jacob Guthrie, and Fred R. Janes, to recover the sum of
$500 with interest, attorney's fees and costs, upon a cer-
tain promissory note, executed on the 23rd day of May,
1894.

The petition is as follows, (omitting caption):

"Comes now the Citizens Bank of North Enid, and
complains of the defendants, and says:

"That it is a corporation duly organized existing and
doing a banking business under and by virtue of the
laws of the Territory of Oklahoma; that on, prior, and
subsequent to May 23, 1894, H. T. Smith and others,
a co-partnership, were doing a banking business at North
Enid, Garfield county, Oklahoma Territory, under the
name of the Citizens Bank, North Enid, of which bank

K. H. Watkins was cashier; that on said date defendants became indebted to said last named bank in the sum of five hundred dollars borrowed money, and in evidence thereof, executed their joint and several promissory note for said amount, due sixty days from date, drawing 12 per cent. interest per annum, from date until paid, and payable at said bank.

"That after plaintiff's incorporation as aforesaid, last named Citizens Bank of North Enid, for a valuable consideration, sold, assigned and transferred by endorsement on the back thereof said note to this plaintiff. A copy of said note is hereto attached, marked exhibit 'A' and made a part hereof.

"Plaintiff further avers that no payments have been made on said note, although payment has been frequently demanded at Citizens Bank, North Enid, at which said note is payable; that plaintiff is still the owner and holder of said note; and that the principal and interest thereof are due and wholly unpaid in the sum of five hundred dollars, together with interest thereon from said 23rd day of May, 1894, until the date of judgment against said defendants on said note, and for costs, and all further proper relief.

"JOHN I. DILLE AND JOHN SCHMOOK, JR.,.

"Attorneys for Plaintiff.

"Exhibit 'A.'

"$500.00    NORTH ENID, O. T., May 23, 1894.

"For value received, sixty days after date, we or either of us, promise to pay to the order of the Citizens Bank, North Enid, Oklahoma Territory, five hundred and 00-100 dollars, appraisement waived or not, at the option of the holder, payable at the Citizens Bank, North Enid, Oklahoma.

"If not paid when due, this note will draw interest at the rate of twelve per cent. per annum from date,

payable annually. If the interest is not paid when it becomes due, to become as principal, and bear the same rate of interest. We, the makers and indorsers, severally waive presentment for payment, protest and notice of protest, and non-payment of this note.

"We, the sureties, guarantors and indorsers hereon, agree to extension of this note without notice, hereby ratifying such extension and binding ourselves for payment thereof, as if no extension of time for, or forbearance of payment had been granted or made. In case of legal proceedings to collect this note, agree to pay ten per cent. additional to the amount as attorney's fees.

"R. W. PATTERSON,
"JACOB GUTHRIE,
  "President of The Enid Town Co.
"FRED R. JANES,
  "Secretary of The Enid Town Co."

To this petition the defendant, Fred R. Janes, filed his separate answer which is as follows, (omitting caption):

"Comes now the defendant, Fred R. Janes, and for his separate answer to the petition filed herein:

"First. Denies each and every allegation therein contained, except such as hereinafter expressly admitted.

"Second. The defendant admits that on or about the 31st day of May, 1894, he signed a note, a copy of which is set out in plaintiff's petition, but denies that he intended thereby to bind himself individually for the payment of said note, or any part thereof, and that the plaintiff herein knew that at the time that this defendant signed said note, that he did not sign the same in his individual capacity, but in the capacity of secretary of the Enid Town company, intending thereby to bind and obligate the said Enid Town company, upon said instrument of writing, for the payment of said sum of money to the plaintiffs at the time set out in said note.

"The defendant, further answering says, that the Enid Town company is, and was when this defendant signed said note as secretary, a corporation duly organized and existing under the laws of the state of Kansas, and doing business at the town of North Enid, in the county of Garfield, under the laws of the Territory of Oklahoma, and that defendant was at said time and now is secretary of said corporation.

"That the said    defendant, further answering says, that the articles of incorporation of said Enid Town company, authorized the said Enid Town company to buy and sell real estate, and carry on a general real esta.e business, and do all things necessary for the proper conduct of the same.

"The defendant, further answering, says, that at the time of the execution and delivery of said note, the plaintiff fully understood that this defendant signed the same in the capacity of the secretary of the Enid Town company, as aforesaid; and that said parties to said note were the said R. W. Patterson and the Enid Town company, and that said note was accepted by them with the understanding and belief that the same was properly signed in the manner and form to bind and obligate the Enid Town company to pay said sum of money to the plaintiff when the same should become due and payable according to the terms of said note.

"Third. The said defendant, for a further defense to the cause of action set up in plaintiff's petition, says, that H. T. Smith was, at all the times mentioned in plaintiff's petition and in this answer, president of the plaintiff, the Citizens Bank of North Enid, and as such has the management and control of said business. That on or about the 31st day of May, 1894, the day upon which this defendant signed the instrument set out and described in plaintiff's petition, the said H. T. Smith called this defendant from the street, in the town of North Enid, into the banking house of said Citizens Bank of

North Enid, and exhibited to him a note, of which the note set out in plaintiff's petition is a copy, for five hundred dollars, payable to Citizens Bank of North Enid, and signed by R. W. Patterson and Jacob Guthrie, president of the Enid Town company, and requested this defendant to sign the same as secretary of said company; that this defendant at the time refused to sign the same except in the capacity of secretary of said Enid Town company, and it was understood and agreed by and between this defendant and the said H. T. Smith, president of the said Citizens Bank of North Enid, that this defendant should sign in the capacity of secretary of the Enid Town company; that the said note should be the note of the Enid Town company, and that this defendant should not be held individually thereon.

"Fourth. Defendant, for further defense, says, that at the time he signed the note the same had been executed as aforesaid by the said R. W. Patterson and Jacob Guthrie, president of the Enid Town company, and the said sum of five hundred dollars, the consideration of said note, had been paid by the said Citizens Bank of North Enid to R. W. Patterson, one of the obligors of said note; that at the time of the execution of said note by R. W. Patterson and Jacob Guthrie, president of the Enid Town company, the payment of said sum of money by the said Citizens Bank of North Enid, there was no agreement or understanding that this defendant should sign said note; that at the time he did sign the same the consideration of said note had all passed, and there was no consideration whatever for his signature thereon.

"Wherefore defendant asks that he may go hence without day and that he may have judgment for his costs."

To the separate answer of the defendant, Fred R. Janes, the plaintiff filed a reply, containing a general denial. Upon the issues thus framed the cause was

tried without a jury, and judgment was rendered in favor of the plaintiff, and against the defendant, Fred R. Janes, in the sum of $800.25, and costs of the action. And thereupon the defendant, Fred R. Janes, filed a motion for a new trial, which was overruled, and exception saved, and from said judgment brings the case here on appeal for review.

Opinion of the court by

HAINER, J.: It appears from the record in this case that the plaintiff in error, Fred R. Janes, the defendant in the court below, offered to prove by parol testimony that he was the secretary of the Enid Town company; that he was acting for said company and not for himself in signing the note in controversy, and that at the time of the execution of said note it was understood between the parties that he did not intend to bind himself by his signature, but intended to bind the corporation. It appears that this evidence was introduced, but was not considered; in fact it was ignored by the court on the ground that the terms of the said note could not be varied by parol testimony, and this is the only question presented by the record and urged by counsel for our consideration.

It is earnestly contended by the learned counsel for the defendant in error that the identical question at issue was passed upon and settled by this court in the case of *Keokuk Falls Improvement Company v. Kingsland and Douglas Manufacturing Company*, 5 Okla. 32, 47 Pac. 844.

The note sued upon in that action is as follows:

"$700.00.            OKLAHOMA, O. T., Oct. 31, 1891.

"On the first day of March, 1892, for value received, we promise to pay to the order of Kingsland & Douglas

Manufacturing Co., ($700.00) seven hundred and no one-
hundredths dollars, at the First National Bank, Okla-
homa City, O. T., with interest from date until paid at
the rate of 8 per cent. per annum, and exchange on St.
Louis.

[Signed]          "KEOKUK FALLS IMPROVEMENT Co.,
          "A. G. CRUM,
          "PERRY RODKEY,
          "A. B. HAMMER."

And on the back of said note appears the following:

"For value received we guarantee   payment of the
within note, waiving demand, notice and protest.
          "A. B. HAMMER,
          "PERRY RODKEY,
          "C. P. WALKER,
          "H. C. JONES,
          "O. A. MITSCHER,
     "As Directors Keokuk Falls Improvement Co.
          "A. B. HAMMER,
          "PERRY RODKEY,
          "ED. J. BEALE."

The question at issue was whether the directors in-
dividualy, or the Keokuk Falls Improvement company,
were liable on said guaranty, and whether parol testi-
mony could be introduced to show that it was the in-
tention to bind the Keokuk Falls Improvement com-
pany.

The court decided that parol testimony was inadmis-
sible, and based its conclusions upon two grounds:
(1) That where a person acting in a private
capacity, as an agent in signing a promissory note,
fails to disclose his agency, but where he describes him-
self merely as a director or trustee or agent for the
person or corporation for whom he is signing, and there

is nothing in the body of the note showing that it is the obligation of his principal, he is personally bound upon the instrument; and where a suit is brought against him individually, he will not be permitted to avoid his liability by parol proof showing that he signed the note in his agency capacity. (2) Where upon the face of a note such an ambiguity exists as makes it impossible for the court to say what the contract does express, parol evidence may be admitted to explain the contract, but not to modify or change it so that the maker may avoid his liability.

We cannot agree with the reasoning or the conclusions reached by the court. It appearing that the indorsers and guarantors having signed their names on the back of the note, "as directors, Keokuk Falls Improvement company," suggested a doubt or ambiguity as to the character of their signatures—that is, whether their signatures to the note were in a representative or individual capacity. It seems that the court took the view that as no doubt or ambiguity existed upon the face of the note, that parol evidence was therefore inadmissible to explain in what capacity the guarantors had indorsed the note. The object of the introduction of parol testimony was not to vary or change the terms of the note, but solely for the purpose of showing in what capacity the guarantors had signed the instrument.

The ruling of the trial court in the case now under consideration in excluding or declining to consider the testimony offered on behalf of the defendant, Fred R. Janes, to sustain the matters pleaded in his answer, was based upon this decision.

It is an elementary principle of evidence that a written instrument cannot be explained or varied by evidence of a parol agreement entered into between the parties, before or at the time of the execution of such instrument, and hence parol evidence of an oral agreement alleged to have been made at the time of the execution of a bill of exchange or promissory note, is inadmissible to vary or contradict the terms of such written instrument.

But, this general rule is subject to the reasonable exception, that where anything appears on the face of the instrument which suggests a doubt or ambiguity as to the party bound, or the character in which any of the persons who signed the instrument acted, parol testimony is competent as between the original parties, for the purpose of showing the true intent and meaning of the parties. And while the adjudicated cases are not entirely harmonious upon this subject, we think that this is the sound doctrine, and is supported by the better weight of modern authorities.

Mr. Mechem, in his work on Agency, section 443, lays down the following rule: "Between the immediate parties to a bill or note, parol evidence is permissible to show: That by a course of dealing between the parties, that form of execution has become to be the recognized and adopted form by which the obligation of the principal is entered into;" also that it is admissible to show, "That the instrument was, to the knowledge of the parties, intended to be the obligation of the principal, and not of the agent, and that it was given and accepted as such."

Parsons in his work on Contracts, in discussing this subject, says:

"But the recent cases and the best reasons are for determining in each instance, and with whatever technical inaccuracy the signature is made, from the facts and the evidence, that a party is an agent or a principal, in accordance with the intention of the parties to the contract, if the words are sufficient to bear the construction. * * If upon the face of the instrument, there are indications suggestive of agency, such as the addition of words of office or agency to the signature, or the imprint of the corporate title on the paper, parol evidence is competent to show who the parties intended should be bound of benefited." .

In *Metcalf v. Williams*, 104 U. S. 93, the supreme court of the United States held that if a person merely adds to the signature of his name, the word, "agent," "trustee," "treasurer," etc., without disclosing his principal, he is personally bound. The appendix is regarded as a *descriptio personae*; it does not of itself make third persons chargeable with notice of any representative relation of the signer. But, if he be in fact a mere agent, trustee, or officer of some principal, and is in the habit of expressing in that way, his representative character in his dealings with a particular party, who recognizes him in that character, the documents thus made and used will not be construed as his personal obligations, contrary to the intent of the parties.

Mr. Justice Bradley, in discussing this subject, said: "It is unnecessary to determine whether the form of the document in this case was sufficient to charge innocent holders of the check with notice of its character. The

fact that it bore two official signatures, that of the complainant, as vice president, and of Aistrop as secretary, is so unusual on the hypothesis of its being an individual transaction, and points so distinctly to an official origin, that it may very well be doubted whether any holder could claim to be innocently ignorant of its true character. But, in the present case, the party claiming to have the beneficial interest in the check was a fellow agent in the company, on whose account it was drawn, actually knew its origin and could not pretend that he took it for anything else than a check of the corporation. The plea that the name of the principal was not disclosed on the face of the paper cannot be made by him for he knew all about it."

The remarks of Mr. Justice Johnson in delivering the opinion of the court in the case of *Mech. Bank v. Bank of Columbia*, 3 Wheat. 326, are apposite to this care. There the cashier of the bank drew a check and signed it with his individual name without any official designation; but the name of the bank was printed as part of the date. The justice said: "The question is, whether a certain act done by the cashier of a bank, was done in his official or individual capacity. Had the draft signed by Paton, borne no marks of an official character on the face of it, the case would have presented more difficulty. But if marks of an official character not only exist on the face, but predominate, the case is really a familiar one. Evidence to fix its true character becomes indispensable." Again, in reference to the ambiguity raised on the face of the check as to whether it was personal or official the justice said: "It is enough for the purposes of the defendant to establish that there

existed on the face of the paper circumstances from which it might reasonably be inferred that it was either one or the other. In that case it became indispensable to resort to extrinsic evidence to remove the doubt. The evidence resorted to for this purpose was the most obvious and reasonable possible, viz: That this was the appropriate form of an official check; that it was in fact cut out of the official check book of the bank, and noted on the margin; that the money was drawn in behalf of and applied to the use of the Mechanics bank; and by all the banks and all the officers of the banks through which it passes, recognized as an official transaction."

In *Brockway v. Allen*, 17 Wend. 40, where the makers of a note appended to their signatures the words, "Trustees of the Baptist Society," the supreme court of New York held that they were entitled to show by proof that there was a corporation called the Trustees of the First Baptist Society of the Village of Brockport, that they were its trustees, and that the note was given by them in their official capacity, and that the plaintiff, the payee, knew this fact.

In *Kean v. Davis*, 1 Zab. (21 N. J. L.) 683, the bill was signed "John Kean, President Elizabeth and Somerville R. R. Co." The court of errors and appeals of New Jersey, in an elaborate opinion by Chief Justice Green, decided that parol proof was admissible to show that the bill was the bill of the company and not of the defendant individually; and held that, although where a written instrument is not ambiguous or uncertain on its face, parol proof cannot be resorted to, to show what was the real intention of the parties; yet that in cases

of ambiguity, on the face of the instrument, as in that case, it might be introduced to explain which of two doubted constructions was the intent of the parties. "The ordinary rule undoubtedly is, that if a person merely adds to the signature of his name the word agent, trustee treasurer, etc., without disclosing his principal, he is personally bound. The appendix is regarded as a mere *descriptio personae*. It does not of itself make third persons chargeable with notice of any representative relation of the signer. But if he be, in fact, a mere agent, trustee or officer of some principal, and is in the habit of expressing, in that way, his representative character in his dealings with a particular party, who recognizes him in that character, it would be contrary to justice and truth to construe the documents thus made and used as his personal obligations, contrary to the intent of the parties."

In *Case Manufacturing Company v. Soxman*, 158 U. S. 431, it was held that where the plaintiff alleges that his acceptance of the notes of a limited liability company, was through a mistake, parol evidence that defendants proposed to organize a corporation with limited liability, and that its obligations were to be given for the purchase out of which the debt arose, is admissible to show that the subsequent acceptance of such notes was within the meaning of the contract.

Mr. Justice Brewer, in delivering the opinion of the court upon this subject, said: "Further than that, the original contract upon its face suggested corporate rather than personal liability.     The signatures' were 'Latrobe Milling Company.   P. H. Soxman, Pres't., H. C.

Best, Sec'y. D. J. Soxman, Treas.' While if there were no corporation such signatures might impose personal liability, yet the purport and notice of such signatures was corporate and not individual liability. When to that is added the knowledge of the plaintiff as to the character of the proposed corporation, and its acceptance of the notes of the corporation in fact organized, can it be doubted that the plaintiff knew the significance of these signatures, or that it was knowingly dealing with a contemplated corporation, and knowingly accepted the notes of such corporation as a fulfillment of all the contract obligations assumed by this instrument? The idea that the plaintiff supposed it was dealing with individuals, and contemplated personal liability, is also negatived by the letter of October 29, 1884, which shows that it understood that it was dealing with a corporation, and that, by the laws of Pennsylvania, corporate liability extended not beyond the assets of the corporation, and cast no burden upon the individual stockholders. The parol testimony thus admitted was not to contradict the language of the written contract, but to explain any doubt as to its meaning, and to fortify the claim of the defendants that the subsequent acceptance of the notes of the limited liability company was no departure from the thought of the original contract, but a well understood and intentional recognition of its real meaning. We see no error in the admission of this testimony."

In *Kline v. Bank of Tescott*, 31 Pac. 688, the supreme court of Kansas held that where a note is executed by a corporation, and is signed by its president and secretary, and its directors write their names upon the back thereof, as directors, before delivery, extrinsic evidence is admis-

sible between the original parties   or any subsequent holder of the note accepting the same as collateral with full notice of all the facts and circumstances connected with the execution and delivery thereof, not only to show that the president and secretary executed the instrument in their official capacity as officers of the corporation, but also that the directors signed the note on the back thereof solely as officers of the corporation and to bind the corporation only.

Mr. Chief Justice Horton, in delivering the opinion of the court, uses the following language:

"The trial court held that the note upon its face, was the note of the Kanopolis Creamery company, and that Waite and Wooley executed it in their official capacity only, but that the parties who signed upon the back were liable personally as guarantors. If extrinsic evidence were not admissible, the ruling of the trial court would be correct. Under the authorities, if the parties who signed the note on the back, and who composed the board of directors of the  Kanopolis Creamery company, had signed the note upon its face, they could show they made it only in their official capacity, as directors of the corporation.    'Where individuals subscribe their proper names to a promissory note, *prima facie*, they are personally liable, though they add a description of the character in which the note is given; but such presumption of liability may be rebutted, as between the original parties, by proof that the note was in fact given by the makers as agents, with the payee's knowledge.' (Byles Bills, 27, note 1; *Hail v. Pierce*, 32 Md. 327; *McWhirt v. McKee*, 6 Kan. 412; *Talley v. Burtis*, 45 Kan. 147; 25 Pac. 603.) In this case it is claimed that, if extrinsic evidence had been received, it would have shown the creditors of the Kanopolis Creamery company—the corporation—signed their names at the instance of F. F.

—36

Scidmore, one of the members of the Western Creamery Building and Supply company, on the back of the note, as officers of the   corporation, and for the corporation only.   It is claimed that F. F. Scidmore assured these directors that the only way to make corporation note was for the officers and directors of the corporation to sign their names and affix their official positions thereto, and that the note was thus signed under his direction to bind the corporation, but not the officers individually. If the parties who wrote their names on the back of the note as directors had signed their names upon the face thereof, they could have shown by extrinsic evidence that they were acting for the corporation only; and we perceive no reason why, as between the original parties or any subsequent holder of the note, accepting the same as collateral, with full notice of all the facts and circumstances connected with the execution and delivery thereof, the same rule will not apply when such signatures are upon the back of the instrument before delivery.   In *Fullerton v. Hill*, (Kan.) 29 Pac. 583, it was ruled that a 'stranger to a promissory note, who writes his name across the back thereof before it is delivered to the payee, incurs, *prima facie*, the liability of the guarantor.   But, parol proof may be received to show the exact liability of such endorser, by showing the agreement and understanding of the parties at the time of such indorsement.' "

In *Benham v. Smith*, (Kan.) 36 Pac. 997, a certain promissory note payable to S. and signed:   "Wm. M. Benham, President Odd Fellows' Hall Association.   A. T. Lea, Secretary," was sued upon by S., the original payee, to hold Benham and Lea personally liable.   The answer alleged that the note was the obligation of the Odd Fellows Hall association, and referred to a mortgage given by the association to S. upon certain real estate to secure the note.   The mortgage concluded as follows:

"In witness whereof, the said party of the first part has consented this deed to be signed by its president, and attested by its secretary, and its corporate seal to be hereto affixed, the day and year first aforesaid, W. M. Benham, president Columbus Odd Fellows Hall Association. Attest: A. T. Lea, Secretary." *Held*, that B. and L., the president and secretary of the association, could introduce the mortgage and also parol evidence to show they signed for the association only, and that it was the intention of all parties to the note to make it the obligation of the association.

In the course of the opinion Mr. Chief Justice Horton said: "If it is not clear from the face of the note whether Benham and Lea contracted on behalf of the Odd Fellows association or for themselves, then, as between the original parties, extrinsic evidence may be introdced to show in fact it was the intention of all the parties, at the time of the execution of the note and its acceptance, to bind the association only, not to make Benham and Lea personally liable. (*Fullerton v. Hill*, 48 Kan. 558, 29 Pac. 583; *Kline v. Bank*, 50 Kan. 91, 31 Pac. 688.) The answer stated a sufficient defense, and the trial court committed error in sustaining a motion for judgment on the pleadings."

In *Bean v. Pioneer Mining Co.*, 6 Pac. 86, the supreme court of California held that in an action on a note, parol evidence is admissible to show that the signature attached to it was made in the capacity of agent for a company, and that the consideration passed to the company; and in such case, if the payee knew that the note was given by the agent of the company, as such, in settle-

ment of an indebtedness of the company, such agent is not bound on the note though he had no power as such agent to execute it.

Mr. Justice McKinstry, in discussing this subject, said: "Whether, in the case before us, the note was the promise of Mason, or the promise of the company by Mason, claiming to act as its agent, was ambiguous at least, and an inquiry into the circumstances might render it certain whose promise if any person's, it was. (*Metcalf v. Williams*, 104 U. S. 93.)    It is perhaps unnecessary to inquire whether the form of the note was sufficient to charge innocent holders with notice of its character. Here the payee named in the note is plaintiff, and we think evidence was admissible that it was understood by plaintiff to be the note of the company, and that the consideration for which it was given passed to the company.    For the purpose of showing the real party to a contract, (where the contract suggests the existence of circumstances which render it doubtful,) conversations of parties to the transaction at the time of making the paper, and at the time of creating the consideration for the bill or note, are admissible as a part of the *res gestae*."

In *Bank v. Colby*, 28 Pac. 118, the supreme court of California held that where a certain note was signed: "G. A. Colby, Pres't Pac. Peat Coal Co.    D. K. Tripp, Sec. pro tem.;" and it was indorsed by G. A. Colby and several others, that *prima facie* it is the note of the coal company.

The rule announced by the supreme court of California in the case of *Hobson v. Hassett*, 76

Cal. 203, 18 Pac. 320, does not overrule the doctrine announced in the case of *Bank v. Colby* and *Bean v. Pioneer Mining Company*. In *Hobson v. Hassett*, the case turned upon a question of fact, and the trial court, after hearing all the evidence, found the note in question was the individual note of the defendant, and not of the corporation, and thereupon the court entered judgment in favor of the plaintiff.    And the court expressly declared that the doctrine announced was not in conflict with the rules announced in *Bank v. Colby* and *Bean v. Pioneer Mining Company*.

In *Martin v. Smith*, (Miss.) 3 So. Rep. 33, in an action on a bill of exchange drawn in the ordinary form but signed by the defendant with the word "treasurer" following his name, it was held by the supreme court of Mississippi, that parol evidence was admissible to show that it was intended to bind the principal, and that the facts pleaded, if true, were sufficient to relive the party from personal liability.

Mr. Justice Arnold, in delivering the opinion of the court, said: "It is true that, generally, extrinsic testimony is not admissible to vary or explain negotiable instruments, but one exception to the rule is that where anything appears on the face of the paper to suggest a doubt as to the party bound, or the character in which any of the signers acted in affixing his name, parol testimony may be admitted as between the original parties to show the true intent and meaning of the parties."

An instrument reading:    "If the Marsh Harvester don't work to his satisfaction, he (W. Thom,) can return the machine to me and I will return his notes to

him.    A. M. Schnell, Agent," was held open to prove by parol that it was intended to bind his principal and not himself.    (*Deering v. Thom,* 29 Minn. 120, 12 N. W. Rep. 350; *Bingham v. Stewart,* 13 Minn. 106.)

In a case where a note in the usual form was signed: "W. T. Boutell, Pres.," it was held that the *prima facie* character of the liability might be overcome by parol evidence, and the obligation shown to be that of the corporation.    (*Collender Co. v. Boutell,* 45 Minn. 21, 47 N. W. Rep. 261;    *Peterson v. Homan,* [Minn.] 46 N. W. Rep. 303.)

A note in the usual form was payable to A. J. Boardman, treasurer, and signed "Minneapolis Eng. and Machine Works, by A. L. Crocker, Secy." and was endorsed. "A. J. Boardman, Treasurer." It was held parol evidence was admissible to show that Boardman indors d it in his official capacity, as treasurer of a corporation .(*Bank v. Boardman,* [Minn.] 48 N. W. Rep. 1116.)

In the case of a note signed, "John Kean, President Elizabethtown and Jonesville R. R. Co.," the court says: "It is not clear who was the contracting party, whether the obligation was assumed by the agent, or whether he contracted on behalf of his principal.    *    *    The question is, who is the contracting party,—whose language is it?"—and it was held parol evidence was admissible. The court quoted the following language from *Lazarus v. Shearer,* 2 Ala. 718: "When however it is doubtful from the face of the contract whether it was intended to operate as the personal engagement of the party signing it, or to impose an obligation upon some third person as his principal, parol evidence is admissible to show

the true character of the transaction." (*Kean v. Davis,*
N. J. Law. 683; *Railroad Co. v. Snead* 19 Grat. 354;
*Rendell v. Harriman,* 75 Me. 497.)

In *Miller v. Way,* 59 N. W. Rep. 467, the supreme
court of South Dakota, in a recent case, has adopted
the following rule: "As between the original parties,
parol evidence that does not tend to contradict the
terms of a written instrument is admissible to show the
true intent and meaning of the persons entering into
the same, when there is something on the face of the
instrument that suggests a doubt as to the parties
bound, and the court cannot by inspection determine
the question from the paper creating the obligation."

Mr. Justice Fuller, after reviewing the authorities,
said: "The note in suit at least suggests upon its face
the existence of the corporation, and that the defendants
were officers thereof; and parol evidence tending to prove
that it was not the individual note of the defendants,
but the obligation of the corporation, and that it was so
understood by all the parties at the time the same was
executed, did not necessarily tend to vary its terms, but
to explain ambiguities, to make certain that which was
doubtful, and to give effect to and carry out the intention
of the parties. We think the evidence offered on the part
of the defendants should have been considered, as the
court seems to have been unable to determine from the
note itself the capacity in which the same was executed,
and witnesses upon both sides were allowed to testify
quite fully upon that issue, raised by the pleadings."

We think the remarks of Judge Fuller are apposite to
this case.

Applying these well settled principles to the case under consideration, we think that the note here in question, on its face, at least, sugests and indicates that it was signed by Janes in a corporate capacity, and that it was intended to bind the corporation which he represented, and not to bind himself individually.    The evidence offered in support of the allegations contained in the answer, which was first excluded by the court, and afterwards admitted, but was not considered, and therefore, admission of such testimony was tantamount to its exclusion,—showed that it was the intent of the parties to bind the corporation, and not to bind the defendant Janes, individually.    We are, therefore, clearly of the opinion that the admission of parol evidence under such circumstances is not violative of the general rule that such evidence is not admissible to vary or change the terms of a written instrument.    The question for the court to decide is not what the contract was, but, whose contract it was.    In other words, the sole question for the court to determine is, on whose behalf was the note executed, and who was the real party bound thereby?  Under such circumstances we are clearly of the opinion that parol testimony is competent and admissible to remove what is uncertain and ambiguous and thus to enable the court to charge as payor, the person or corporation which it was intended should be bound when the note was executed.    We think that this rule is not only in consonance with sound legal principles but is just and equitable in its scope and operation.

The rule as stated in the case of *Keokuk Falls Improvement Co. v. Kingsland and Douglas Manufacturing Co.*, is hereby overruled.

For the reasons herein stated, the judgment of the district court is reversed and the cause remanded with directions to grant a new trial, and proceed in conformity with this opinion.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.