## PHILLIPS PETROLEUM CO. v. WIDICK.

No. 24674. Oct. 8, 1935.

Rehearing Denied Dec. 3, 1935.

Application for Leave to File Second Petition for Rehearing Denied Dec. 24, 1935.

R. H. Hudson, Raburn L. Foster, and Ballenger & Ballenger, for plaintiff in error.

Frank Nesbitt and Nellie Nesbitt, for defendant in error.

CORN, J. The Phillips Petroleum Company commenced this action against O. H. Widick in the district court of Ottawa county, seeking to recover judgment against the defendant in the sum of $1,931.06 and interest, representing an alleged balance due on a promissory note in the original sum of $3,000, and to foreclose a chattel mortgage given to secure the payment of said note, and praying for the appointment of a receiver to take charge of a combination residence—filling station and equipment, de-

scribed in the mortgage, pending the final determination of the case and the sale of the property.

The defendant, O. H. Widick, filed an answer and counterclaim alleging a breach of contract on the part of the plaintiff and praying judgment for damages by reason thereof in the sum of $6,175. When the case was called for trial, the plaintiff dismissed its petition without prejudice and the case went to trial upon the answer and counterclaim of the defendant and the plaintiff's reply thereto. The jury rendered judgment in favor of the defendant in the sum of $3,000, and the court rendered judgment upon the verdict accordingly. Seeking a reversal of said judgment, the plaintiff has appealed to this court, and said parties, occupying the same relative positions here as in the trial court, will be referred to as plaintiff and defendant, respectively. in the same order as they appeared in the court below.

The record discloses that the defendant and a partner by the name of Newton had been operating a bulk sales station for plaintiff at Miami, handling gasoline, oil, grease, and other commodities in that line, and in the fall of 1930 both plaintiff and defendant found it to their mutual benefit to eliminate the partner from the agency, leaving the defendant as sole agent in charge of said station, and in order to enable defendant to purchase the interest of his partner in the equipment used in operating the station the plaintiff, through its district manager. proposed to make the defendant a loan of $3,-000 for that purpose. A commission contract was signed by plaintiff and defendant on November 1, 1930, setting out the terms and conditions of the employment of the agent and fixing and specifying the commissions to be paid the agent on his sales of the various commodities and outlining his duties generally. The contract specified that it was to be effective from date until December 1, 1930, and then to continue monthly thereafter, revocable at the option of the company.

The defendant contends, however, that the provision of the contract making it revocable at the option of the company was altered by an agreement that the contract should remain in force for a period of two years, and that the loan of $3,000. evidenced by the note and secured by the mortgage aforesaid, was to be liquidated by the deduction of $125 per month from the defend-

ant's commission checks. The note and mortgage were executed on November 28, 1930, and the company mailed check for $3,000 to defendant on January 7, 1931. Beginning in January the company deducted $125 from defendant's commissions and credited same on the note and continued to do this each month up to and including August. 1931. The parties operated the business under this arrangement until August 12, 1931, at which time the plaintiff company canceled the commission contract and checked out the defendant. This act on the part of the plaintiff was the result of a disagreement which arose between the parties when the plaintiff demanded that the defendant surrender his commission contract and accept a new one reducing the commissions allowed the agent. It appears from the record that the plaintiff undertook to force the new contract upon the defendant by threatening to revoke the existing contract, claiming the right to do so under the revocation clause of said contract.

The defendant contended that the original commission contract was modified as to the right of the plaintiff to revoke same at its option by a supplemental agreement evidenced by a letter written by an agent of plaintiff's, which is as follows:

"Mr. O. H. Widick,

"Miami, Oklahoma.

"Dear Sir:

"In accordance with our telephone conversation yesterday, we are attaching herewith our check No. 299058 in the amount of $3,-000 covering loan to you, same being secured by chattel mortgage and note, and which amount is to be liquidated by the deduction of $125 per month from your commission check.

"Will you kindly acknowledge receipt of this check?

"Yours very truly,

"J. T. Sweeney."

Defendant contended that he did not want the loan unless the company would agree to let him keep the agency at least 24 months and allow him to pay the same at the rate of $125 per month out of his commissions and that it was agreed that the company would write him a letter to that effect. thus modifying the original contract.

The defendant alleges in his answer that the letter was intended to evidence the agreement of the parties that the agency or commission contract was to remain ef-

fective until the note of $3,000 was paid at the rate of $125 per month, and that it was intended as an alteration of the term of the contract giving the plaintiff the right to revoke said contract at its option; and there is evidence in the record tending to establish that such was the intent of the parties. The defendant further alleges in his answer that the letter is ambiguous and does not clearly express the agreement of the parties.

The letter states the note is to be liquidated by the deduction of $125 per month from the defendant's commission check, and the language used, in the absence of qualifying terms, implies that the entire debt was to have been liquidated at the rate of $125 per month out of his commissions earned in the course of his employment and that said employment must necessarily continue for a period of 24 months in order to liquidate it out of his commissions. But the plaintiff contends that the letter simply meant that said amount would be deducted and applied on the note during such time as the defendant was retained as the agent of the company. The trial court permitted the defendant, over the objection of the plaintiff, to introduce parol evidence as to preliminary negotiations of the parties for the purpose of showing the meaning and intention of the parties in the use of the words employed in the letter.

The parties disagreed as to the meaning of the letter, and it is obvious from the letter itself that the language used therein is ambiguous and susceptible of more than one meaning, and the court in admitting parol evidence of preliminary negotiations to show the intent of the parties in the use of the words employed in the letter did not commit error.

In Eagle Printing & Publishing Co. v. Chandler, 116 Okla. 108, 243 P. 237, the rule with reference to the admissibility of parol evidence is stated as follows:

"In determining the intention of parties to a written contract, the terms of which are plain and unambiguous, only the contract itself may be considered, but where the written language is indefinite and uncertain and susceptible of more than one construction, parol evidence is admissible and may be considered, not to vary or alter the terms of the written contract, but to determine what was the intention of the parties consistent with either construction of which the instrument is susceptible."

In Tyer v. Caldwell, 114 Okla. 13, .242 P. 760, this court construed section 5052, C. O. S. 1921 (sec. 9473, O. S. 1931), as authorizing parol evidence as to prior or contemporaneous conversations for determining the intent of the parties in the use of the words employed in the written contract, paragraph 2 of the syllabus of the opinion being as follows:

"Section 5052, C. O. S. 1921, providing, 'if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it,' authorizes parol evidence as to prior or contemporaneous conversations, for the purpose of determining the meaning and intention of the parties in the use of words employed in the written contract, but does not authorize the introduction of parol evidence to vary the terms of a written contract plain in their meaning, nor to show that the intent of the parties differed from that implied in the words used."

Other cases applying the rule are: Barricklow v. Boice, 50 Okla. 260, 150 P. 1094; Richardson v. Chatfield, 36 Okla. 700, 129 P. 728; Gilbert v. Citizens Nat. Bank, 61 Okla. 112, 160 P. 635; First Nat. Bank v. Womack, 37 Okla. 359, 156 P. 207; Cohee v. Turner et al., 37 Okla. 778, 132 P. 1082; Janes v. Citizens Bank, 9 Okla. 546, 60 P. 290.

"The general rule is that two written agreements, one being supplementary to the other, should be construed together as constituting one contract. This is true although not dated at the same time, yet they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other." Berquist v. Thomas, 86 Okla. 214, 207 P. 964; Brake v. Blain, 49 Okla. 486, 153 P. 158; Kelly v. Baughman, 66 Okla. 200, 167 P. 80; Republic National Bank v. First State Bank, 110 Okla. 299, 237 P. 578.

There can be no doubt as to the intent of the parties when the transaction between them is considered as a whole. The plaintiff desired to eliminate Newton and thereby reduce its operating costs at the Miami station $400 per month, and the defendant would profit by being the sole owner of the business. Defendant was unable to purchase Newton's interest in the equipment without the $3,000 loan, but had no use for the equipment unless he had the agency, and was dependent upon his commissions from the business to pay off the loan. The defendant did not want the loan unless he was assured that his employment would continue long enough to liquidate it out of his commission checks, at the rate of $125 per month. Con-

sidering the letter of January 7, 1931, and the commission contract together, and taking into consideration the fact that the monthly payments of $125 each were deducted by the plaintiff out of the commission checks for several months as agreed in the letter, it is impossible to escape the conclusion that it was the intention of both parties that the employment of the defendant should continue at least 24 months.

As to whether the contract between the parties was determinable at the option of the plaintiff, and the termination of the contract by plaintiff was wrongful, and if so, the amount of damages, if any, sustained by the defendant by reason thereof, were questions of fact for the jury to determine. The jury found in favor of the defendant, under proper instructions of the court, and awarded the defendant damages in the sum of $3,000.

It is a well-settled rule that where there is any competent evidence reasonably tending to sustain a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, the Supreme Court will not review the evidence for the purpose of determining the weight thereof, and substitute its judgment for the judgment rendered on the verdict, and the verdict will not be disturbed on appeal.

The judgment of the trial court is affirmed, and judgment is rendered against the bondsmen on the supersedeas bond, the matter being properly presented under the rules of this court.

McNEILL, C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.