PAULY et ux. v. PAULY et ux.

No. 32292. Dec. 10, 1946.

Rehearing Denied Jan. 21, 1947.

*176 P. 2d 491.*

. Elton B. Hunt and W. L. Eagleton, both of Tulsa, and James R. Eagleton, of Oklahoma City, for plaintiffs in error.

Everest, McKenzie & Gibbens, of Oklahoma City, for defendants in error.

OSBORN, J. This is an action to quiet the title to real estate, and to remove a cloud therefrom, brought by William M. Pauly and Dorothy C. Pauly, plaintiffs, against Frank R. Pauly and Grace M. Pauly, defendants. The cause was tried to the court, and judgment was for plaintiffs. Defendants appeal.

The essential facts are undisputed. William M. Pauly and Frank R. Pauly are brothers, and on February 19, 1941, they and their sister, Nell Wheatly, were the owners of the northwest quarter of section 27, township 14 north, range 4 west of I.B. & M., in Oklahoma county. Prior to February 19th the two brothers had negotiated for a sale of the interest of Frank to William for a consideration of $5,150. Frank lived at Tulsa, and William at Lawton, and they met in Oklahoma City to close the deal.

Frank brought with him from Tulsa two quitclaim deeds made to his brother, both executed and acknowledged by himself and his wife. They were identical in form, except that one contained a clause reserving to Frank one-third of the oil, gas and other minerals, with the right of ingress and egress. When they were ready to close the deal he presented this deed to William, who refused to complete the transaction with the reservation in the deed, but offered to do so if Frank would agree to a deduction of $10 per acre, or $533.33, from the purchase price originally agreed upon, stating that he was advised that the mineral interests were worth $10 per acre. Frank refused to make any deduction, but urged that he was entitled to his share of the oil if the land was productive. The testimony as to what was then verbally agreed upon is slightly divergent. William testified:

"He painted some big pictures about the oil possibilities, and I forgot what all transpired. He said: 'I believe the land is worth a lot more than you think it is,' or something to that effect, and I believe I said, 'At one time possibly it was.' Finally he says—I suggested, 'Well, maybe we could get up a quitclaim deed without the mineral reservation, and if we do get this windfall, or

whatever you wish to call it, we will give you one-third.' 'All right', he says, 'I will do that', and he at that time presented another quitclaim deed."

Frank testified:

"He said, 'If there is any oil there you can have your one-third of it.' I said, 'All right, it is a deal'."

After this verbal agreement had been made Frank produced and delivered the quitclaim deed which did not reserve any mineral interest, and William paid him the full consideration therefor, and the deed was placed of record.

Thereafter, and on the same day, Frank suggested that the verbal agreement should be put in writing. William agreed, and told Frank to write it out and he and his wife would sign it. Thereupon Frank, with pen and ink, wrote upon the bottom of the quitclaim deed containing the mineral reservation, which deed William had refused to accept, the following memorandum, which was signed by William and his wife:

"Memorandum of Contract

"In case there is ever any oil production on Sec. 27 N. W. Quarter Township Fourteen North Range 4 West of the Indian Meridian, We hereby agree to remit annually one-third of royalty payments received to Frank R. Pauly or his heirs.

"Signed—William M. Pauly
Dorothy C. Pauly"
"Oklahoma City Feb. 19

At William's request, Frank wrote across the face of the deed the word "void". Shortly thereafter the parties separated, and returned to their respective homes. William and his sister made an oil and gas lease on the land, and on August 15, 1944, Frank placed of record a mineral deed, made by him individually to himself and his wife, purporting to convey a one-third mineral interest in the land. This deed was recorded shortly after Frank had received a letter from William indicating that he did not consider himself bound by the "gentleman's agreement". Sometime in the fall of 1944 oil was discovered upon the land. Apparently the pipeline taking the oil refused to pay plaintiffs for the full production, but held one-third in suspense, and on January 11, 1945, this action was brought.

The trial court found the facts substantially as stated above; concluded that the so-called "gentleman's agreement" that Frank should share in the production if oil or gas was produced from the land was not enforceable, and rendered judgment for the plaintiffs, denying the defendants any relief. In so doing we think the trial court erred.

Defendants contend that the quitclaim deed from Frank to William, and the memorandum thereafter signed by plaintiffs, are to be construed together as parts of the same transaction; that by the memorandum plaintiffs acknowledged that Frank had and retained a one-third interest in the minerals; that this interest was held in trust by William, and that when oil or gas was discovered it was the duty of William to convey such interest to Frank, and that the trial court should have required him to do so.

Plaintiffs contend that the oral agreement was superseded by the quitclaim deed conveying to plaintiffs all of the interest of defendants in and to the land, and that in any event such oral agreement was void as violative of the statute of frauds; that the written memorandum, having been executed and delivered after the delivery and recording of the quitclaim deed, was a separate agreement, and was wholly without consideration, so that plaintiffs were not bound thereby, and defendants could not successfully assert any rights thereunder.

We think that the evidence clearly establishes that the deed and memordum were parts of the same transaction, and should be construed together. The whole agreement between the parties was that defendants would deed their interest in the land to plaintiffs without any reservation, and if oil or gas should be discovered on the land plaintiffs would give defendants one-third of the money paid to them as royalty for their

part of the oil and gas produced and sold. The fact that the part of the agreement contained in the memorandum was not reduced to writing until after the delivery of the deed does not preclude its consideration as a part of the transaction. Plaintiffs do not deny that the memorandum correctly states the oral agreement made by them before the deed was delivered, and that by such agreement defendants were induced to deliver to plaintiffs their quitclaim deed without any reservation of mineral interests.

In First State Bank v. Southwest Nat. Bank, 127 Okla. 10, 257 P. 382, we said:

"A part of an oral agreement which is reduced to writing, but which has the appearance of an entire and complete contract within itself, is not subject to variation or modification by parol testimony, or subject to modification by an executory, oral agreement, unless the substance of the oral agreement is in writing and acquiesced in by the parties sought to be charged in the performance of the conditions involved in the contract.

"But, if the oral agreement is reduced to writing in the manner aforesaid, it will be deemed to relate back to the date of the written contract and will be treated as a contemporaneous written agreement."

In Phillips Petroleum Co. v. Widick, 175 Okla. 376, 52 P. 2d 773, we said:

"The general rule is that two written agreements, one being supplementary to the other, should be construed together as constituting one contract. This is true although not dated at the same time, yet they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other."

Plaintiffs argue that the deed and memorandum do not show on their face that each was executed as a means of carrying out the intent of the other because they are diametrically opposed to each other, citing Phillips Petroleum Co. v. Widick, supra. But the opinion in that case discloses that the words "carrying out the intent of the other"

were not so interpreted as to exclude a supplementary agreement because it modified or changed the original contract, but as permitting the two to be construed together in order to carry out the agreement or intent of the parties as to the whole transaction.

In Papenthien v. Coerper, 184 Wis. 156, 198 N.W. 391, plaintiff, the owner of an apartment building, on April 1, 1920, made a verbal agreement for the sale of the building to Coerper, with the option to repurchase within two and one-half years. At the time she was advised that Coerper intended to make the property his home. On April 20, 1920, she deeded the property to Coerper and his wife. On April 21st Coerper gave her a written option to purchase, which was not signed by his wife. When plaintiff sought to exercise her option Coerper and his wife refused to convey. Their defense to the action was that the property was homestead, and that the option contract was void because the wife did not sign it. The court said:

"But the option agreement of April 21st was manifestly executed for the purpose of reducing a part of the oral agreement to writing. Although it was executed one day after the execution of the deed, it should be construed as a writing contemporaneous with the deed, and they should be read together. As so construed, we have the complete agreement between the parties, so far as present issues are concerned, reduced to writing. For reasons already stated, this agreement did not require the signature of the wife. At that time the premises were the property of the plaintiff. They had not become the homestead of the defendants. As a condition, and at the very moment of parting with title, the plaintiff acquired the right of repurchase. The signature of the husband, who was authorized to act for the wife in the transaction, bound both defendants to the option. In no view of the transaction do we see any difficulty in enforcing the terms of the option."

The general rule is stated in 13 C.J. 528, as follows:

"Where several instruments are made a part of one transaction, they will be

read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together."

Our statute, 15 O.S. 1941 § 158, provides that:

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

The contracts in the instant case clearly come within the terms of the statute, and are to be taken together, and plaintiffs were bound by the memorandum agreement.

While the oral contract, as shown by the testimony hereinabove set forth, was to some extent uncertain and indefinite, it was superseded by the writing. 15 O.S. 1941 § 137. And the writing is plain, unambiguous, and certain. The promise set forth in the memorandum agreement was shown to have been an additional consideration moving from plaintiffs to defendants for the delivery by defendants of the quitclaim deed without any reservation of the minerals. It was not a conveyance or reservation of a mineral interest, nor was it an agreement to convey such an interest at some future date. But it was more than a mere personal obligation of the plaintiffs, which they could at any time avoid by disposing of all or a part of their interest in the minerals. It, in effect, assigned to Frank Pauly the royalty which, upon and after the production of oil or gas from the described land, would accrue to the interest conveyed to plaintiffs by Frank R. Pauly. Such was their intention and the construction placed on the memorandum by them, and therefore, by us. We have heretofore stated that a written instrument plainly making an appropriation of a fund constitutes an equitable assignment thereof. Tucker v. Ware, 169 Okla. 401, 37 P. 2d 623. And in that case the fund assigned was to accrue in the future.

So interpreted, and we think this is a fair and reasonable interpretation, when the memorandum and the deed are construed together, the right thereby conferred upon Frank R. Pauly is analogous to, or at least in many respects similar to, an oil payment, such as was considered in Local Bldg. & Loan Ass'n v. Eckroat, 186 Okla. 660, 100 P. 2d 261, and Goetter v. Manahan, 192 Okla. 600, 138 P. 2d 113, and held to be a covenant running with the land. While in the instant case the amount to be paid is not stated, the interest from which the payments are to be made is definitely fixed, and the reasonable inference is that they are to be made as long as oil or gas are produced.

Nor is it material that the promise to make the payment out of the oil in the instant case was not set forth in the deed. The deed and memorandum are to be construed as one instrument. Mid-Continent Life Ins. Co. v. Goforth, 193 Okla. 314, 143 P. 2d 154. Therefore, the fact, as between the parties and subsequent grantees with notice, would be the same as if the promise contained in the memorandum had been written into the deed prior to its delivery.

It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. Lackey v. Quigley, 181 Okla. 492, 74 P. 2d 927.

Under the agreement of the parties plaintiffs were trustees for Frank R. Pauly to the extent of his retained rights. This arrangement was consummated in this manner for plaintiffs' convenience. But plaintiffs have repudiated and disavowed the trust, and, in justice and equity, Frank R. Pauly is entitled to have the interest so held reconveyed to him. He is not entitled to any share of the bonus money received by plaintiffs for leases made by them, or to

participate in the making of oil and gas leases, or to share in delay rentals, his interest entitling him only to a share in the royalty from actual production.

The judgment, canceling the mineral deed made by Frank R. Pauly to Grace M. Pauly, is affirmed. The judgment denying any relief to Frank R. Pauly is reversed, with directions to the trial court to render a judgment requiring the plaintiffs to execute and deliver to Frank R. Pauly, his heirs as assigns, a good and sufficient assignment of one-third of the royalties from actual production of oil, gas and other minerals from the land, under present or future leases made by the plaintiffs, their heirs, assigns, or successors in interest, costs herein being taxed against defendants in error.

GIBSON, C.J., HURST, V.C.J., and RILEY, DAVISON, and ARNOLD, JJ., concur.