BAY MITCHELL, Judge.
 

 T1 In a dispute arising out of a multimillion dollar purchase/sale of multiple companies, Defendants/Appellants David R. Hull
 
 *1137
 
 ("Hull") and Billy D. Hare ("Hare") appeal the trial court's interlocutory order denying their motion to compel arbitration and for stay of the action pursuant to 12 0.8. Supp. 2006 § 1879(A). Hull and Hare ("Appellants") contend the arbitration provision contained in the Purchase and Sale Agreement ("PSA") entered into between Appellants and Plaintiff/Appellee High Sierra Energy, LP. ("High Sierra") is applicable to all causes of action arising under or related to the PSA, including disputes relating to the Employment Agreements for Hull and Hare respectively.
 

 {2 Appellants and High Sierra executed the PSA on September 10, 2007, for the purchase and sale of the assets of Hull's Oilfield Service, Inc., Briggett, Inc., and Briggett Transportation, and the purchase of all outstanding "membership interests" of National Coal County, LLC.
 
 [1]
 
 In accordance with the PSA, High Sierra paid Hull and Hare a purchase price of forty-two million dollars.
 
 [2]
 
 Pursuant to the PSA, High Sierra made an additional investment of eighteen million dollars in the purchased companies.
 

 1 3 On September 10, 2007, Hull and Hare each entered into Employment Agreements with High Sierra to serve as executive level managers for National Coal County, LLC, which included managing the daily business operations, maintaining client relationships and sustaining the good standing of the business. The Employment Agreements were executed with and attached as an exhibit to the PSA. Section 12.6 of the PSA specifically incorporated all attached exhibits into the Agreements.
 
 [3]
 
 Section 10 of the Employment Agreements specifically incorporated the PSA as a part of the terms of employment.
 
 [4]
 
 Section 12.14(a) of the PSA contains an arbitration provision which states: "Arbitration. Except as expressly provided otherwise in this Agreement, all disputes between the Parties arising under or related to this Agreement shall be solely and exclusively resolved by final and binding arbitration."
 

 {4 On March 5, 2009, High Sierra commenced a lawsuit in the trial court against Hull and Hare alleging: breach of the Employment Agreements, misappropriation of trade secrets and confidential information and unfair competition, unjust enrichment, misappropriation of assets and property, constructive trust, breach of fiduciary duty, fraud and deceit, tortious interference with contractual or business relations, tortious interference with prospective economic advantage, and negligence. High Sierra alleged that it discovered evidence in December 2008 that Appellants "[Wlillfully breached their Employment Agreements, including the Non-Solicitation Provision, the Non-Disclosure Provision and the Non-Compete Provision." High Sierra's Petition also sought preliminary and permanent injunctive relief prohibiting Hull and/or Hare from conducting any further activities alleged in the Petition. |
 

 {5 On April 27, 2009, pricr to filing an Answer, Appellants filed their motion to compel arbitration and stay the district court proceedings. They contended Section 12.14 of the PSA required High Sierra's claims be submitted to arbitration. High Sierra filed its objection to Appellants' motion to compel
 
 *1138
 
 arbitration claiming, "(1) [Nlone of the causes of action asserted by High Sierra against the Appellants arise under or invoke the terms of the Purchase Agreement but rather solely arise under the terms of the Employment Agreements and (2) such claims are excluded from arbitration as provided in the Purchase Agreement." A hearing was held on May 14, 2009, after which the trial court overruled Appellants' motion to compel arbitration. The order memorializing that decision was filed on May 27, 2009. Appellants filed this appeal two days later.
 

 1 6 The parties agree that Section 12.14 of the PSA contains a valid agreement to arbitrate disputes arising under the PSA. High Sierra contends, however, that the allegations contained in its Petition arise solely under the Employment Agreements and in no way implicate the PSA. High Sierra maintains that Section 9 of the Employment Agreements unquestionably shows the parties intended to except disputes or claims arising under the Employment Agreements from arbitration.
 
 [5]
 
 Additionally, High Sierra contends that Section 6 of the Employment Agreements, which describes the remedies available to the parties, expresses the intent that disputes arising under the Employment Agreement be litigated, not arbitrated.
 
 [6]
 
 Finally, High Sierra claims that Section 12.7 of the PSA contains an additional exception to the arbitration provision, which states:
 

 Governing Low. All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the Buyer's Documents shall be governed and construed in accordance with the laws of the State of Oklahoma for contracts made and to be fully performed in such state, without giving effect to any choice-of-law rules that may require the application of laws of another jurisdiction. The parties further agree that any dispute arising out of this Agreement shall be decided by the state courts in Oklahoma City, Oklahoma, or if any action or proceeding involving such questions arises under the Constitution, laws or treaties of the United States of America, or if there is a diversity of citizenship between the parties thereto, in the United States District Court for the Western District of Oklahoma. The parties shall each submit to the jurisdiction of said court and agree that service of process by certified mail, return receipt requested, shall be sufficient to confer said courts with in per-sonam jurisdiction.
 

 High Sierra does not elaborate on how Seetion 12.7 of the PSA constitutes an additional exeeption to the arbitration provision.
 

 17 Hull and Hare claim the PSA and the Employment Agreements are to be construed as one document, because each incorporates and references the other. Appellants also argue that some of the allegations contained in High Sierra's Petition directly reference and relate to the PSA. Appellants contend the PSA identifies only two exceptions to arbitration found in Sections 8.5(c) and 12.14(m) of the Agreement, which are inapplicable to the facts of this case.
 
 [7]
 

 
 *1139
 
 T8 Appellants point out that Section 12.7 of the PSA and Sections 6 and 9 of the Employment Agreements do not mention arbitration or "expressly address the scope of the parties' agreement to arbitrate." Appellants suggest that, at best, Sections 6 and 9 of the Employment Agreements contain an implied exelusion from arbitration. Appellants argue that Section 12.7 dictates the proper jurisdiction for litigating disputes under the PSA in the event that Hull and Hare chose to waive their rights to arbitration.
 
 [8]
 
 Finally, Appellants contend that reading Seetion 12.7 of the PSA as an exception to the arbitration provision would render "the arbitration clause meaningless, as no dispute arising under the PSA would be subject to arbitration."
 

 T9 An order denying a motion to compel arbitration is an interlocutory order appealable by right, which we review de movo. See 12 0.8. Supp.2006 § 1879(A)(1); see also Thompson v. Bar-S Foods Co., 2007 OK 75, ¶ 9, 174 P.3d 567, 572. "The interpretation of an arbitration agreement is governed by general state-law principles of contract interpretation." Bar-S Foods, ¶18, 174 P.3d at 574 (internal quotations omitted) (citing Wilkinson v. Dean Witter Reynolds, Inc., 1997 OK 20, ¶ 9, 933 P.2d 878, 880).
 

 110 In seeking to compel arbitration, a party "must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition" Rogers v. Dell Computer Corp., 2005 OK 51, ¶16, 138 P.3d 826, 830. In determining whether "the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit the particular dispute to arbitration." Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc., 2007 OK 12, ¶ 22, 160 P.3d 936, 944-45,
 

 {11 The contract must be construed to carry out the intent of the parties at the time the contract was made. Oxley v. General Atlantic Resources, Inc., 1997 OK 46, ¶ 14, 936 P.2d 943, 945. The Court of Civil Appeals has previously held: "In the search for the parties' intent, '[sleveral contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.'" Hirsch Holdings, LLC. v. Haonnagan-Tobey, L.L.C., 2008 OK CIV APP 79, ¶ 14, 193 P.3d 970, 973 citing 15 O.S. § 158; Sunrizon Homes, Inc. v. American Guar. Inv. Corp., 1988 OK 145, ¶ 9, 782 P.2d 103, 107.
 

 112 Oklahoma law reflects this State's "strong presumption in favor of arbitration." Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co., 1997 OK CIV APP 58, ¶ 24 947 P.2d 594, 599. Title 12 0.8. Supp.2006 § 1857(A) declares arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." This provision reveals "a clear legislative intent that any disputes arising from the interpretation or application" of such agreements "shall have an immediate and speedy resolution by required arbitration." Voss v. City of Oklahoma City, 1980 OK 148, ¶8, 618 P.2d 925, 928. The Supreme Court also has recognized that in situations "where arbitration has been contracted for it constitutes a substantive and mandatory right." Voss, 15, 618 P.2d at 928. The right to compel arbitration is thus an affirmative defense to an action on contract. See Shaffer v. Jeffery, 1996 OK 47, ¶ 6, 915 P.2d 910, 913.
 

 
 *1140
 
 118 "[Clourts generally look with favor upon arbitration provisions as a shortcut to substantial justice with a minimum of court interference." Long v. DeGeer, 1987 OK 104, ¶5, 753 P.2d 1327, 1328. Ambiguities are resolved in favor of arbitration. City of Muskogee v. Martin, 1990 OK 70, ¶ 8, 796 P.2d 337, 340 ("Arbitration should be allowed unless the court can say with 'positive assurance' the dispute is not covered by the arbitration clause."). However, the courts will not impose arbitration where the parties have not agreed to it because "[alrbitration is a matter of consent, not coercion." Oklahoma Oncology, ¶ 22, 160 P.8d at 944.
 

 114 In the present case, this Court finds the PSA and the Employment Agreements clearly and unambiguously incorporate and reference each other; therefore, the Agreements must be viewed together to determine the intent of the parties. 15 0.8. 2001 § 158; Hirsch Holdings, ¶ 14, 193 P.3d at 973. Because the PSA and the Employment Agreements must be construed together, it is immaterial whether the allegations contained in High Sierra's Petition arise solely under the Employment Agreements or also implicate the PSA.
 

 15 Section 12.14 of the PSA contains a broad arbitration provision, which specifically allows for exceptions to arbitration as "expressly provided otherwise" in the Agreement. As mentioned above, the exceptions to Section 12.14 expressly set forth in the PSA are inapplicable to the issues in this case. Both Section 12.7 of the PSA and Section 9 of the Employment Agreements discuss the law governing the Agreements, set forth the proper jurisdiction for claims asserted under the Agreements, and contain no reference to arbitration. Section 6 of the Employment Agreements discusses the remedies available to a non-breaching party which are enforceable by the trial court and also makes no mention of arbitration.
 

 1 16 In viewing Sections 12.7 and 12.14 of the PSA together with Sections 6 and 9 of the Employment Agreements, we find an ambiguity exists regarding the applicability of the arbitration provision. The Employment Agreements contain no reference to arbitration. The PSA itself contains conflicting provisions regarding whether "all disputes" arising under the PSA are subject to arbitration.
 

 117 This Court agrees that if Seetion 12.7 of the PSA is read as an exception to the arbitration provision in Section 12.14, the arbitration clause would be rendered meaningless. Appellants and High Sierra clearly and unambiguously agreed to resolve certain disputes through arbitration. Oklahoma law commands that "where arbitration has been contracted for it constitutes a substantive and mandatory right." Voss, ¶5, 618 P.2d at 928.
 

 {18 Oklahoma law mandates that ambiguities are to be resolved in favor of arbitration, unless the court can say with "positive assurance" that the matter is not subject to arbitration. City of Muskogee, T8, 796 P.2d at 340. We cannot say with positive assurance that a dispute arising under the Employment Agreements is not subject to arbitration in accordance with Section 12.14 of the PSA. Therefore, we reverse the order of the trial court overruling Appellant's motion to compel arbitration and for stay of the action.
 

 19 REVERSED AND REMANDED.
 

 JOPLIN, P.J., and BELL, V.C.J., concur.
 

 [1]
 

 . The effective date for the purchase and sale of Hull's Oilfield Service, Inc., Briggett, Inc., and Briggett Transportation, Inc. was August 1, 2007, and the effective date for the transfer of the membership interests in National Coal County, LLC was September 1, 2007.
 

 [2]
 

 . The purchase price was paid as follows: a cash payment in the amount of $40 million and common "units" of High Sierra in the amount of $2 million, both paid one-half to Hull and one-half to Hare. .
 

 [3]
 

 . Section 12.6 of the PSA specifically states: 'This Agreement (including the Exhibits and Schedules hereto, and the documents and instruments executed and delivered in connection herewith) constitutes the entire agreement among the parties with respect to the subject matter hereof.... All Schedules and Exhibits attached to this Agreement are expressly made a part of, and incorporated by reference into, this Agreement."
 

 [4]
 

 . Section 10 of the Employment Agreements specifically states: "Entire Terms. These terms and the Purchase and Sale Agreement set forth above contain the entire expression of Employee's terms of employment and Employee acknowledges that Company has made no promises or guaranties other than as may be expressly set forth herein, if any." (Emphasis added to "and").
 

 [5]
 

 . Section 9 of the Employment Agreements provides: "Law Governing. These terms shall be governed by and construed in accordance with the laws of the State of Oklahoma. The parties agree to the exclusive jurisdiction of the state and federal courts located in Oklahoma City, Oklahoma."
 

 [6]
 

 . Section 6 of the Employment Agreements provides: "Remedies. The Employee acknowledges that monetary damages would be inadequate to compensate the Company for any breach by the Employee of the covenants set forth in Section 5 above. The Employee agrees that, in addition to other remedies that may be available, the Company shall be entitled to obtain injunctive relief against the threatened breach of these Terms or the continuation of any breach, or both, without necessity of proving actual damages. If any party hereto defaults in the performance of its covenants, agreements, or other obligations described in this Agreement, then in addition to any and all other rights or remedies which the non-defaulting party may have against the defaulting party, the defaulting party will be liable to and will pay to the non-defaulting party a sum equal to the non-defaulting party's court costs and the reasonable fees of its attorneys and their support staff incurred in enforcing the covenants, agreements and other obligations of the defaulting party in this Agreement."
 

 [7]
 

 . Section 3.5(c) concerns objections to the Final Statement and provides: "If the parties are unable to resolve any disputed fiem within 15 days after the Buyer's receipt of Seller's objections, any such disputed item shall be submitted to a nationally recognized independent accounting
 
 *1139
 
 firm mutually agreeable to the parties who shall be instructed to resolve such disputed item within 30 days. The resolution of disputes by the accounting firm so selected shall be set forth in writing and shall be conclusive, binding and non-appealable upon the parties ..."
 

 Section 12.14(m) of the PSA states: "To the extent that the dispute relates to a claim for indemnification under Article 11 that arises in connection with a third party claim asserted in court, then the foregoing arbitration provisions shall not be applicable to that dispute so that the matter may be brought in connection with the action involving the third party claim."
 

 [8]
 

 . The Court is not persuaded by Appellants' suggestion that any reference to the jurisdiction of the courts in Oklahoma City or court costs is consistent with an agreement to arbitrate based upon the fact that arbitration awards must be confirmed in state or federal court.