RAMICK v. HOWARD-GM II



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:RAMICK v. HOWARD-GM II

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 RAMICK v. HOWARD-GM II
2018 OK CIV APP 23
414 P.3d 397
Case Number: 115795
Decided: 11/16/2017
Mandate Issued: 03/28/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 23, 414 P.3d 397

 

JILLIAN RAMICK and CLAYTON RAMICK, Plaintiffs/Appellees,
v.
HOWARD-GM II, INC., d/b/a, SMICKLAS CHEVROLET, and BBVA COMPASS FINANCIAL CORPORATION, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS
AND APPEAL DISMISSED WITHOUT PREJUDICE IN PART

M. Kathi Rawls, Minal Gahlot, RAWLS GAHLOT, PLLC, Moore, Oklahoma, for Plaintiffs/Appellees

C. Craig Cole, John E. Gatliff II, Kendra N. Avila, C. CRAIG COLE & ASSOCIATES, Oklahoma City, Oklahoma, for Defendants/Appellants

KEITH RAPP, JUDGE:

¶1 The defendants, Howard-GM II, Inc. d/b/a Smicklas Chevrolet (Smicklas) and BBVA Compass Financial Corporation (Compass), appeal an Order denying their motion to compel arbitration in an action filed by Jillian Ramick and Clayton Ramick (collectively, Ramicks). The defendants also appeal an order sustaining in part only their motion to dismiss.

BACKGROUND

¶2 Ramicks purchased a used automobile from Smicklas. The transaction was financed through Compass.

¶3 Ramicks began to have trouble with the vehicle and assert that it had previously been damaged. They claim that Smicklas' sales personnel misrepresented material facts regarding the automobile. Compass refused their demand to rescind the transaction. Ramicks sued and, in their amended petition, alleged claims for fraud, rescission, breach of contract, defamation, violation of the Oklahoma Consumer Protection Act and the Uniform Commercial Code, negligence and intentional infliction of emotional distress.

¶4 Smicklas and Compass moved to compel arbitration based upon an arbitration provision in the Purchase Agreement Contract (Contract).[1] They also sought dismissal for failure to plead definitely allegations of fraud and for failure to state a claim.

¶5 The Contract provides that Ramicks agree to buy and Smicklas agrees to sell a vehicle for a price paid in accord with the Contract. A portion of the Contract is outlined in a box titled in bold print as "Please read carefully! Notice of Arbitration." The text explains the right to exercise arbitration and its consequences. The text further provides:

The Federal Arbitration Act (9 U.S.C. § 1, et seq.) governs this arbitration agreement and not any state law concerning arbitration, including state law arbitration rules and procedures. This arbitration agreement survives any termination, payoff or transfer of the Contract.

¶6 In addition to the Contract, Ramicks and Smicklas executed a separate Retail Installment Sales Contract (RISC).[2] The RISC is dated the same day as the Contract. Both involve the same automobile purchase transaction. The RISC recites:

You, the Buyer (and co-Buyer, if any) may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

¶7 The RISC sets out the credit terms and financing details of interest, consequences of failure to make payments, etc. The closing provisions provide, in part:

HOW THIS CONTRACT MAY BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. (Signatures of Ramicks).

¶8 Smicklas assigned the RISC to Compass. The RISC makes no mention of the Contract and it does not contain an arbitration clause.[3] There were several additional documents included in the transaction.[4]

¶9 The trial court denied the motion to compel arbitration.[5] In doing so, the trial court ruled that the RISC expressed all of the contract agreements of the parties and did not contain a merger clause to merge the Contract (and its arbitration provision) into the RISC. The trial court relied on Walker v. BuildDirect.com Technologies, Inc., 2015 OK 30, 349 P.3d 549.[6]

¶10 The trial court also denied the motion to dismiss, except as to the fraud claim. The plaintiffs were given an opportunity to amend, but that amendment, if any, is not in the Appellate Record.

 

¶11 This Court notes that Ramicks' trial court response and their appellate brief argue that the arbitration clause was fraudulently induced and that it is unconscionable. Last, Ramicks argue that Compass is not a party to the arbitration provisions of the original contract and cannot compel arbitration. However, the motion hearing focused upon the holding of Walker and did not address these additional points. Moreover, the trial court's decision did not rule on these points. The development of applicable facts and legal analysis are first accomplished in the trial court. Bivins v. State ex rel. Oklahoma Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456, 464. Therefore, these issues are not addressed in this Opinion.

¶12 Smicklas and Compass have appealed. Their appeal includes the ruling denying the motion, in part, based on a failure to state a claim. Ramicks challenge this part of the appeal on the ground that it is not an appeal of a final order. Smicklas and Compass essentially concede that point by asking this Court to deem the appeal as an application to assume original jurisdiction.

¶13 This Court will consider only the appeal of the denial of the request to compel arbitration. The remainder of the appeal does not involve an appeal of a final order and that part of the appeal is dismissed without prejudice. This Court declines to deem the appeal as an application to assume original jurisdiction.

STANDARD OF REVIEW

¶14 The sole appellate issue is whether the parties have a contract calling for arbitration. Generally state law principles apply to determine the existence of such a contract. Walker v. BuildDirect.com Technologies, Inc., 733 F.3d 1001, 1004 (10th Cir. 2013); Rogers v. Dell Computer Corp., 2005 OK 51, ¶ 14, 138 P.3d 826, 830. Clearly, the initial Contract with Smicklas does have an arbitration provision and the RISC does not have an arbitration provision. Equally apparent is that both documents, on their face, are contracts and neither incorporates the other.

¶15 The trial court's decision is based upon an interpretation of the RISC. The interpretation of a contract is a matter of law. Corbett v. Combined Commc'ns Corp. of Oklahoma, Inc., 1982 OK 135, ¶ 5, 654 P.2d 616, 617. A trial court's legal decision is reviewed de novo. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, 932 P.2d 1100 n.1.

ANALYSIS AND REVIEW

¶16 The resolution of this appeal depends upon whether the RISC is the entire agreement of the parties or whether there are multiple contracts. There is no question that multiple documents were executed as a part of this transaction and that one of them, the Contract, provides for arbitration.

¶17 Thus, Ramicks must have the Contract "go away." They reach this result by arguing that the RISC is the entire agreement and the Contract is merged without including an agreement for arbitration either specifically, or by incorporation of the Contract's arbitration clause. The Ramicks' conclusion must be in accord with Walker, where the Oklahoma Supreme Court instructs that before the Contract, or at least its arbitration clause, may be considered as merged into the RISC, the RISC must meet the following criteria:

Under the Oklahoma law of contracts parties may incorporate by reference separate writings . . . where (1) the underlying contract [here the RISC] makes clear reference to the extrinsic document [here the Contract], (2) the identity and location of the extrinsic document may be ascertained beyond doubt, and (3) the parties to the agreement had knowledge of and assented to its incorporation.

Walker, 2015 OK 30 ¶ 16, 349 P.3d at 554.

¶18 The RISC does not incorporate the Contract in accord with Walker.

¶19 Therefore, in order for Smicklas and Compass to prevail there must be several contracts as a part of the transaction which must be construed together. In this case, the Oklahoma statutes instruct that:

Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.

15 O.S.2011, § 158.

¶20 Here, the facts clearly satisfy the statutory criteria of (1) "relating to the same matters"; (2) "between the same parties"; and. (3) "made as parts of substantially one transaction." In Pauly v. Pauly, the Oklahoma Supreme Court construed together a deed to real estate and an agreement regarding the reservation of oil and gas rights. There, the Court held:

Where several instruments are made a part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together.

Pauly v. Pauly, 1946 OK 336, ¶ 16, 176 P.2d 491, 495 (quoting 17 C.J.S. Contracts, § 298) (emphasis added).[7]

¶21 Thus, the question in this case under review is whether there is one contract (the RISC as the surviving contract after merger) or two contracts (RISC and Contract) jointly interpreted under Section 158.

 

¶22 All of the documents used in this transaction are on forms required and approved by the Oklahoma Used Motor Vehicle and Parts Commission (Commission).[8] 47 O.S. Supp. 2016, § 582(E)(1)(a).[9]

¶23 It is reasonable to infer that the content of the contract forms used in this transaction have been approved inasmuch as they are contained in the list of required forms required by the Commission. The Commission regulations list the required forms for a used automobile retail sale.[10]

¶24 Therefore, by virtue of controlling regulations, the transaction between Ramicks and Smicklas involved the Contract and the RISC as two separate contracts. Thus, the "several contracts' component of Section 158 is present along with the remaining components as stated above. The transaction documents are then to be construed together as required by Section 158. This results in a provision for arbitration as specified in the Contract.

 

¶25 It is noted that the "entire agreement" provision in the RISC states that it is the entire agreement "relating to this contract" and, in context, related to the RISC. This would mean that the RISC is the "entire agreement" only insofar as financing is part of the transaction. The Court in HHH Motors, LLP v. Holt, 152 So.3d 745 (Fla. Dist. Ct. App. 2014)[11] concluded that this language constituted a merger and absent inclusion of arbitration in the new agreement, there was no arbitration agreement. However, there the Court made no mention of whether a Florida regulatory agency specified the documents for a used vehicle sale.

¶26 In Knight v. Springfield Hyundai, 81 A.3d 940, 948 (Pa. Super. Ct. 2013), the Court ruled that the Retail Installment Sale Contract "subsumes all other agreements relating to the sale." The Court referenced a statute (subsequently repealed) requiring a written contract which "shall contain all of the agreements between the Buyer and the Seller relating to the installment sale of the motor vehicle." The Court interpreted the statute as requiring one document that covers all of the contracting parties' agreements. By regulation, such is not the case in Oklahoma and this Court has not been provided an Oklahoma statute similar to the statute cited in Knight.

¶27 Ramicks also cite Gonzalez v. Consumer Portfolio Services, Inc., 2004 WL 2334765 (Va. Cir. Ct. 2004). There the statute required a "buyer's Order" "during the negotiating phase of a sale and prior to any sales agreement." The parties then entered a retail installment sales contract with "entire agreement" language as here. The Court ruled that the retail installment sale contract was the controlling agreement. There is no clear decision that the Buyer's Order was itself a contract. However, the Oklahoma regulatory scheme calls for a sale contract as well as a retail installment sale contract in a sale-on-credit transaction.

¶28 This Court finds that the cases from other jurisdictions are not persuasive and may be distinguished because of the Oklahoma regulatory scheme.

CONCLUSION

¶29 The trial court erred in finding merger of agreements without arbitration in the surviving agreement. Here, this transaction necessarily involved two separate contracts because of controlling regulations promulgated by the Oklahoma Used Motor Vehicle and Parts Commission. 15 O.S.2011, § 158, requires that these two contracts be construed together to determine the parties contractual intent.[12] It is undisputed that the Purchase Agreement calls for arbitration. Therefore, the trial court erred regarding this lone issue and the cause is reversed.

¶30 The trial court begins by finding whether the parties have an agreement to arbitrate. Rogers v. Dell Computer Corp., 2005 OK 51, 135 P.3d 826. Here, based upon a single issue, the trial court incorrectly ruled that the parties did not have an agreement to arbitrate. However, Ramicks' contentions of fraudulent inducement and unconscionability pertain to the existence of an agreement to arbitrate. Because these issues were not decided by the trial court, the Record is insufficient for an appellate court's determination of whether the parties have an agreement to arbitrate. Id. In light of those undecided issues, this cause is remanded for further proceedings to address those issues.

¶31 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS, AND APPEAL DISMISSED WITHOUT PREJUDICE IN PART.

FISCHER, P.J., concurs, and GOODMAN, J., concurs in result.

FOOTNOTES

[1] Contract, Ex. 1 to Motion to Dismiss, Record, at 39.

[2] Contract, Ex. 2, Record, p. 40; Response to Motion to Dismiss, Ex. 1, Record, p. 65.

[3] The Appellate Record does not affirmatively show which of the two documents was signed first.

[4] Exs. 3-6 to Motion to Dismiss, Record, p. 16.

[5] Journal Entry. Record, p. 226.

[6] The Journal Entry shows a cite for Walker also as 733 F.3d 1001. This is the case where the Tenth Circuit Court of Appeals certified the question addressed in the Oklahoma case. Walker v. BuildDirect.com Technologies, Inc., 733 F.3d 1001 (10th Cir. 2013) (Federal District trial court subsequently affirmed in unpublished Opinion in Walker v. BuildDirect.com Technologies, Inc., 604 F. App'x 792 (10th Cir. 2015)).

[7] Compare, High Sierra Energy, L.P. v. Hull, 2010 OK CIV APP 96, 241 P.3d 1139. The parties executed a purchase-sale agreement containing an arbitration clause. They also executed an employment agreement, but it did not contain an arbitration provision. The Hull Court found that the two agreements referenced and incorporated each other and would, therefore, be constructed together in accord with Section 158.

[8] Okla.Admin. Code § 765:1-1-2 (2005), provides, in part:

(a) Creation. The Used Motor Vehicle and Parts Commission (hereinafter "Commission") is created by 47 O.S. Section 581 et seq. Applicable definitions and the powers and the duties of the Commission are set forth in 47 O.S. Section 581 et seq. and 47 O.S. Section 591.1 et seq.

[9] Section 582 creates the Commission and provides, in part:

E. 1. a. The Commission is hereby vested with the powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objectives of Section 581 et seq. of this title, and is hereby authorized and empowered, pursuant to the Administrative Procedures Act, to make and enforce all reasonable rules and to adopt and prescribe all forms necessary to accomplish said purpose.

[10] Okla. Admin. Code, § 765:10-3-1(2015) provides:

(a) Retail Sales Forms. The following forms shall be required in the sale of a used motor vehicle by a used motor vehicle dealer to anyone other than a licensed dealer:
(1) Sales contract or bill of sale,
(2) Odometer statement,
(3) Federal Trade Commission Buyer's Guide conforming to FTC and state standards,
(4) Written notice of thirty (30) day title-transfer requirement and receipt for delivery of certificate of title to buyer,
(5) Used motor vehicle dealer's temporary tag,
(6) Condition of sale:
(A) warranty, or
(B) vehicle service contract, or
(C) warranty disclaimer,
(7) Finance or security agreement, if applicable, and
(8) Consignment agreement, if applicable,
(9) Spot delivery form, if applicable,
(10) We Owe' form, if applicable,
(11) Any other form which affects the rights of either party.
(b) Dealer to dealer forms. The following forms shall be required in dealer to dealer transactions:
(1) Bill of sale, and
(2) Odometer statement, if required.
(c) Approval. All forms must be approved by the Commission. The content and forms to be used shall be filed thirty (30) days prior to use, and if not rejected in thirty (30) days from the filing date, the forms will be conditionally approved.
(d) Standards. The forms required shall contain substantially the following information:
(1) Sales contract or bill of sale. 
(A) The sales contract or bill of sale shall state the names of the parties, the make, model, tag number and vehicle identification number (VIN) of the vehicle subject to the transaction, a statement of the selling amount, a description of the vehicle traded in, if any, and the consideration given therefore, and the statement referring to the FTC Buyer's Guide as required by federal law or rule, and proper signatures of the parties.
(B) Said form shall also contain or have attached a statement of any terms that create any contingencies in the completion of the contract, including contingencies relating to financing, whether by the dealer or a third party, and any limitations to which the contingencies may be subject.
(C) Said form shall also state, in clearly understandable terms, the type of title the purchaser shall receive, whether it be an "original" green title; an insurance loss dated title; a title with a theft or flood damage notation; or a rebuilt, salvage or junk title, or any other disclosures or discrepancies noted on the face of the title, including special notations regarding mileage or odometer readings, but shall not include a "repossessed" or "repo" title, together with some form of written acknowledgment by the purchaser that the purchaser is aware of the type of title to be received. Failure to make said disclosure shall create a presumption that the type of title to be received shall be an "original" green title without discrepancies of any sort.
(D) Said form shall not contain statements such as "trade in value does not reflect actual cash value of trade in" or any language that suggests the amounts stated are not the true value agreed upon by the parties.
(2) Odometer statement. The odometer statement must conform to the requirements of federal and state law.
(3) Federal Trade Commission Buyer's Guide.
(A) From and after May 9, 1985, in all sales to consumers, as defined in Title 16 Code of Federal Regulations Section 455.1(4), it shall be required that dealers display and complete the "Buyer's Guide" form required by the Federal Trade Commission. Display and completion of the "Buyer's Guide" as required by Federal Trade Commission Used Motor Vehicle Trade Regulation Rule shall be deemed compliance with this rule.
(B) The "Buyer's Guide" required herein shall not be used in lieu of warranty disclaimer forms to disclaim warranties, actual or implied. In order to disclaim any warranties, a separate warranty disclaimer form must be used.
(C) From and after May 9, 1985, conditions of sale forms must include the following language, conspicuously written on that form: "The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale." Condition of sale contracts which do not contain this language shall not be approved by this Commission. Nothing in this rule shall be construed to make any additional informational or substantive requirements as to warranties, implied warranties or service contracts beyond that presently required by the Used Motor Vehicle Trade Regulation Rules or state law.
(4) Title, tax stamp and tax transfer notice requirement. It shall be the duty of every person licensed to sell new or used motor vehicles to advise each purchaser in writing about his title requirements and payment of any taxes due. It shall be the duty of the selling dealer to affix the applicable used motor vehicle dealer's tax stamp in the appropriate place on the assignment or re-assignment area of the certificate of title. Dealers failing to comply with provisions of this section shall be responsible for all taxes due on such sales or on such vehicles.
(5) If a prospective purchaser makes a deposit of anything of value to obtain the option to complete a purchase (of a used motor vehicle) in the future, the dealer shall acknowledge the deposit in writing, the time period for which the option to purchase is valid, whether the deposit is refundable in whole or in part, and the conditions, if any under which the deposit may be refunded. The deposit shall be deemed refundable unless it is clearly stated in writing that the deposit or a portion thereof is non-refundable.
(e) Used motor vehicle dealer's temporary tags. Misuse of the used motor vehicle dealer's temporary tag may be grounds for the assessment of a fine or, suspension or revocation of the used motor vehicle dealer's license.

[11] HHH Motors, LLP sought review in the Florida Supreme Court, but voluntarily dismissed so no further review occurred. HHH Motors, LLP v. Holt, 173 So.3d 962 (Table) (Fla. 2015). Thus, the value of the decision as persuasive authority is questionable.

[12] It is noted that the "entire agreement" provision in the RISC is limited to the RISC and is not a provision covering the Contract agreements. The specific language of the RISC states that it is the entire agreement "relating to this contract" and in context related to the RISC. This means that the RISC is the "entire agreement" only insofar as financing is part of the transaction.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 96, 241 P.3d 1139, HIGH SIERRA ENERGY, L.P. v. HULL
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1946 OK 336, 176 P.2d 491, 198 Okla. 156, PAULY v. PAULY
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 2005 OK 51, 138 P.3d 826, ROGERS v. DELL COMPUTER CORPORATION
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2015 OK 30, 349 P.3d 549, WALKER v. BUILDDIRECT.COM TECHNOLOGIES INC.
Discussed at Length
 1982 OK 135, 654 P.2d 616, Corbett v. Combined Communications Corp. of Oklahoma, Inc.
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 158, Several Contracts Taken Together
Discussed
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 582, Establishment of the Oklahoma Used Motor Vehicle and Parts Commission
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA