**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 19, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

ANDY BASS, Trustee of the Andy Bass
Family Trust; JEFFREY R. ATKINS;
GAYLAN ADAMS; DENNIS BATES;
RAYMOND CARTER; SHERRI CARTER;
AARON CATES; JULIE CATES; EDDIE
COIT; CARY R. COKER, Trustee of the
Cary R. Coker Family Trust; FRANK
COLLAMORE; MICHAEL CURTIS; ERIC
DUBBELL; STEVE ECKERD; MATTHEW
EDWARDS, a/k/a Tom Edwards; CRAIG
FERGUSON; RAYMOND FOSKIN, a/k/a Ray
Foskin; DAVE FRANKENFIELD; MIKE
GRADY; GAIL GRADY; PENNY P.
HAMMACK; GARLAND T. HAMMACK,
JR., a/k/a Dusty Hammack; JOE HAYNIE;
DANIEL HEATON; STEVEN D. HOEFNER;
DAVID E. HOWE, Trustee of the David E. and
Sandra R. Howe Living Trust; SANDRA R.
HOWE, Trustee of the David E and Sandra R
Howe Living Trust; CHRIS JAMES; LEROY
JAMES; DR. KELLY KLONTZ; DAVE
KROPP; MARIA KROPP; KENNETH
LANMAN; RON LEE; DEBBIE LEE;
BRYAN MORRIS; ERIC MORRIS;
RONALD G. MOSS; DEREK NEHER;
PETER PAPPAS; SHELLEY PAPPAS;
SCOTT SABOLICH; TIM SANDERS; MARY
ANN SANDERS; DEVON SAUZEK;
MARCIA SAUZEK; RON SKRASEK;
LEANNE SKRASEK; TOM SOLLER;
KATHY SOLLER; JOHN W. STEELE; ROSE
STEELE; RYAN STONER; WALT
SWIDERSKI; MONICA SWIDERSKI; TIM
TACKETT; JASON THOMAS; CHUCK
TROUTMAN; ARCO VAN ANTWERPEN;
KIM VAN ANTWERPEN; DONNA WARD;
CURTIS WEST; KAREN WEST; JOHN
WILLIAMS; LISA WILLIAMS; GARY

No. 18-6184
(D.C. No. 5:17-CV-00006-R)
(W.D. Oklahoma)

WURDEMAN; JUDY WURDEMAN; and
JOHNNY YI,

      Plaintiffs - Appellees,

v.

TOUR 18 AT ROSE CREEK, LP,

      Defendant Counterclaimant - Appellant.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

This is an appeal from a diversity action for breach of contract under Oklahoma law. Tour 18 at Rose Creek, LP, which owns and manages the Rose Creek Golf Club, challenges the district court's grant of summary judgment on both liability and damages in favor of Appellees, individuals whose lifetime memberships to Rose Creek were summarily terminated at the start of 2017. Tour 18's breach of contract defense hinges on whether Rose Creek's "Rules & Regulations" were properly incorporated by reference into the lifetime membership agreements signed by Appellees. We conclude that Tour 18 has not, as a matter of law, met Oklahoma's standard for incorporation by reference. We further determine that no material factual

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dispute exists as to the amount of damages awarded by the district court for Tour 18's breach. Accordingly, we affirm.

## I. BACKGROUND

### A. *Factual History*

In July 2009, Tour 18 at Rose Creek ("Tour 18"), a Texas limited partnership, purchased Rose Creek Golf Club ("Rose Creek") in Edmond, Oklahoma. To raise money for the purchase, Tour 18 sold fifty "Masters Memberships" to interested persons for $30,000 each. The corresponding "Masters Membership Agreement" ("MMA") drafted by Tour 18 provides that this $30,000 "shall constitute payment of Lifetime dues and entitle Member to Lifetime privileges at the Rose Creek Golf Club for his/her family." App. at 96. Masters Members' privileges included access to the golf course, twelve guest rounds a year, license to book tee times two weeks in advance, full privileges at two "Sister courses to Rose Creek," a personally engraved stone on "Rose Creek Bridge," and various other perks. App. at 97–98. The MMA made a Masters Membership freely transferrable to and inheritable by immediate family members, and saleable to others for a $3,000 transfer fee. It further stipulated that should Tour 18 "sell, transfer, or otherwise dispose of the Rose Creek Golf Club, voluntarily or involuntarily, or discontinue operations . . . , the $30,000 will be refunded in full to the Masters Member." App. at 97. The final paragraph of the MMA concerned termination of membership:

> Should Member's membership be terminated by Tour 18 at any point in time *pursuant to the club rules as established and published by Tour 18*, Member shall be entitled to a refund of his $30,000.00 less an amount

3

equal to the number of months he has been a member multiplied by the monthly family dues member would have paid for a golf membership during the time period prior to his/her termination. . . .

App. at 98 (emphasis added).

Tour 18 maintained a separate document titled "Rose Creek Rules & Regulations" (the "R&Rs").[1] The R&Rs include a "General Club Rules" provision that enumerates twenty-five specific Rose Creek rules. App. at 617–18. They also contain four references to termination of membership. The "Members Dues and Charges" provision details the procedure for terminating membership in the event of delinquent dues payment. App. at 618. The "Conduct of Members" provision allows for terminating membership "for conduct unbecoming a gentleman or lady," or for conduct "against the best interest of the Club." App. at 619. The "Violation of any Rules and Regulations" provision lays out a graduated three-step warning process for violations, culminating in termination of membership. App. at 625. Lastly, the "Resignation of Membership" provision references termination as follows:

> In the event of resignation. Written notice must be received at least thirty (30) days in advance. Upon receiving the letter, dues will stop on the date requested.
>
> *Note: Rose Creek management may terminate a member at any time if deemed necessary*[.]

App. at 619 (emphasis added).

_____

[1] Tour 18 insists that these rules were "available at the clubhouse" when Appellees signed the MMAs. Aplt. Br. at 12. Appellees contend this cannot be true, because the clubhouse was not yet built when the MMAs were signed. Aple. Br. at 17. This factual dispute does not affect our analysis of whether the R&Rs were incorporated by reference.

Toward the end of 2016, facing alleged financial difficulty, Tour 18 decided to terminate all Masters Memberships. According to Tour 18 President Dennis Wilkerson, Rose Creek "had been steadily losing money and members for a number of years" thanks to "[a] variety of factors," including "the Masters Members' treatment of other members, a decline in membership . . . , and a downturn in the Oklahoma economy." App. at 244. Nevertheless, Mr. Wilkerson insisted that Tour 18 "ha[d] not sold, transferred, or otherwise disposed of" Rose Creek, and that no such disposition was "imminent or pending." App. at 244.

Tour 18 sent all Masters Members the following letter, dated December 1, 2016:

> Due to numerous issues with the Masters Members, Tour 18 at Rose Creek, LP deems it necessary to terminate this agreement.
>
> Pursuant to the last paragraph of the Masters Membership Agreement and the Rose Creek Rules and Regulations Resignation of Membership, Tour 18 at Rose Creek, LP is hereby terminating the Master Member Program effective January 1, 2017.
>
> According to the last paragraph of the Master Membership Agreement, all of the original members have amortized out based on our old family membership rate of $350.00 per month. July 15, 2009 through December 15, 2016 equals 89 months. 89 x $350.00 = 31,150.00.

App. at 100.

## B. *Procedural History*

Appellees, the fifty Masters Members whose lifetime contracts Tour 18 terminated as of January 1, 2017, sued in Oklahoma state court for breach of contract and declaratory and injunctive relief. Tour 18 invoked diversity jurisdiction to

5

remove the case to the United States District Court for the Western District of Oklahoma. Exercising jurisdiction under 28 U.S.C. § 1332, the district court declined to grant the Masters Members a preliminary injunction against termination of their memberships and bifurcated the issues of liability and damages. Both parties then moved for summary judgment on liability.

On March 30, 2018, the district court granted the Masters Members' motion and reinstated their memberships. First, the court determined that the MMAs did not incorporate the R&Rs because "[e]xtrinsic material is properly incorporated only if the underlying contract . . . makes clear reference to the separate document, the identity of which may be ascertained beyond doubt," and "[r]eferencing 'club rules' is not tantamount to referencing the Rose Creek Rules and Regulations." App. at 1007. The court went on to note that even if the R&Rs were incorporated, "the section entitled Resignation of Membership would not alert a Master Member as to the Defendant's retention of a right to terminate their membership without any particular reason"—because a Masters Membership could be transferred or sold, its holder would have no reason to resign. App. at 1009. Thus, the Resignation of Membership provision "would create an ambiguity when construed with the [MMAs'] Lifetime provision," App. at 1010, which should be read against Tour 18, the drafter of both documents. Accordingly, the court held that Tour 18 had breached the MMAs by terminating the Masters Memberships and deemed the terminations ineffective.

6

The Masters Members then moved for summary judgment on damages. They asserted damages of $350 for each month their privileges under the MMAs had been suspended between January 1, 2017, and March 30, 2018, totaling $261,935 for all fifty members. In support, the Masters Members relied on Tour 18's December 1, 2016 termination letter, which "amortized out" Masters Memberships using the rate of $350 per month, App. at 100, and two sworn statements from Mr. Wilkerson: a January 2017 affidavit stating that Rose Creek charges monthly dues of $350, and a February 2017 declaration stating that Tour 18 would lose yearly income of $210,000 should "former Master Members" be granted "free access to the facilities," as calculated by "[f]ifty members times $350.00 multiplied by 12 months," App. at 1235–36. The Masters Members also pointed to Tour 18's own damages brief, where it admitted both that $350 was "the regular family membership rate at Rose Creek" as of January 1, 2017, and that Masters Membership privileges were unavailable from that date until March 30, 2018. App. at 1129.

Tour 18 opposed the motion, arguing that "damages should be measured by the reasonable costs [Masters Members] incurred to play golf during the Period of Suspension of which they were otherwise deprived." App. at 1134. Tour 18 also argued that the Masters Members were "barred from recovery based on the failure to mitigate" their damages by "obtaining similar golfing privileges" elsewhere. App. at 1136. In support, Tour 18 produced a new declaration from Mr. Wilkerson that stated "Masters Memberships do not have a monthly value," and "there are seven other golf

7

courses in the Oklahoma City area which provide golfing amenities similar in nature to those offered by Rose Creek Golf Course." App. at 1182–83.

The district court granted the Masters Members' motion, concluding that the proper measure of damages is "the value of a monthly membership for the time the Master Membership program was improperly eliminated, January 1, 2017 through March 30, 2018." App. at 1246. The court noted that Mr. Wilkerson's latest declaration was "best characterized as self-serving and an attempt to create an issue of fact where none exists," App. at 1248, and was contradicted both by Tour 18's termination letter and Mr. Wilkerson's January 2017 affidavit. The court thus found "no dispute that the value of the Master Membership from the perspective of the Defendant was $350.00 per month," App. at 1248, because Tour 18's "own representatives provide[d] the necessary evidence regarding the value of each membership," App. at 1249. Finally, the court deemed mitigation of damages inapplicable because "regardless of whether a Master Member chose to golf at another club during the pendency of this litigation, the member was still deprived of each of the benefits of membership set forth in the [MMA]." App. at 1249. Thus, the court found no genuine issue of material fact as to damages, and entered judgment in favor of the Masters Members for the amount of $261,900.

Tour 18 timely appealed the district court's rulings on both liability and damages. We have jurisdiction under 28 U.S.C. § 1291.

8

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

> We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*Id.* (internal quotation marks omitted). But "where the nonmoving party will bear the burden of proof at trial on a dispositive issue," that party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).

Sitting in diversity, we apply the substantive law of the forum state—here, Oklahoma. *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 (10th Cir. 2017).

### A. *Summary Judgment - Breach of Contract*

Tour 18 contends that the district court erred in finding it breached the MMAs by terminating all Masters Memberships. The MMAs provide for "terminat[ion] by

9

Tour 18 at any point in time pursuant to the club rules as established and published by Tour 18." App. at 98. Tour 18 argues that the phrase "pursuant to the club rules as established and published by Tour 18" incorporates by reference the R&Rs, which allow termination whenever "Rose Creek management . . . deem[s] [it] necessary." Aplt. Br. at 4.[2] Oklahoma law places the burden of proving a contract upon the party alleging that contract for its defense. *See Nat'l Sur. Co. v. Bd. of Ed. of City of Hugo*, 129 P. 25, 26 (Okla. 1912). Thus, Tour 18 must first establish a genuine issue regarding whether the R&Rs are incorporated by reference into the MMAs, and then do the same regarding whether the R&Rs permit termination of Masters Memberships whenever Tour 18 deems it necessary. Because we conclude that Tour 18 cannot establish incorporation by reference, we do not address whether the R&Rs permitted termination under these circumstances.

Under Oklahoma law, "[a] contract may include a separate writing or portions thereof, if properly incorporated by reference." *Walker v. Builddirect.Com Techs., Inc.*, 349 P.3d 549, 553 (Okla. 2015). A properly incorporated extrinsic document "'becomes constructively a part of the writing,' forming a single instrument." *Id.* (quoting 11 Williston on Contracts § 30:25 (4th ed. 1999)). But "Oklahoma law does not recognize a vague attempt at incorporation by reference." *Id.* at 554. Incorporation is effective only when "(1) the underlying contract makes clear reference to the extrinsic document, (2) the identity and location of the extrinsic

---

[2] Tour 18 makes no argument that it can prevail without incorporating the R&Rs by reference.

document may be ascertained beyond doubt, and (3) the parties to the agreement had knowledge of and assented to its incorporation." *Id*. We address the first two of these required elements, which are closely intertwined.

As the district court determined, the MMAs fail to "make[] clear reference to the separate document, the identity of which may be ascertained beyond doubt." App. at 1007. Tour 18 argues that the key clause in the MMAs' last paragraph—"pursuant to the club rules as established and published by Tour 18"—"clearly refers to something other than the MMA or any of its terms." Aplt. Br. at 12. This may be true, but it is not enough: Clear reference must be made to *the extrinsic document*, and the "something other" being alluded to is not unambiguously the R&Rs, or even a single discrete writing.[3] While the MMAs make general reference to "the club rules," the document Tour 18 seeks to incorporate has a specific, proper title: "Rose Creek Rules & Regulations." And, as the Masters Members argued, the "club rules" could just as easily refer to the "General Club Rules" provision contained within the R&Rs. The MMAs' general reference to "the club rules," without further detail, does not "clear[ly] reference" the R&Rs and certainly does not do so "beyond doubt," as required by Oklahoma law.

---

[3] Tour 18's argument that "[t]he 'club rules as established and published by Tour 18' was a known, discrete document," Aplt. Br. at 13, contradicts Tour 18's own briefing before the district court, in which it stated that the MMAs "do not mandate a particular set of rules were effective and were to remain in effect in perpetuity," App. at 654.

11

The MMAs also fail to specify adequately the location of the "club rules." Tour 18 argues that the reference is to the R&Rs, which "are published and located prominently" at the Rose Creek clubhouse and were also given to Masters Members in their "membership packages." Aplt. Br. at 11–12. But Oklahoma's test for incorporation requires that "*a contract* must . . . describe [an extrinsic document] in such terms that its . . . location may be ascertained beyond doubt." *Walker*, 349 P.3d at 551 (emphasis added).

For example, in *Walker*, the Oklahoma Supreme Court held there was no incorporation by reference where the contract referred to "Terms of Sale," but made no mention of the website where that document could be found. *Id.* at 554. Likewise, the MMAs refer to "club rules as established and published by Tour 18," but make no mention of where such rules are or can be found—whether posted on a clubhouse wall, included in a membership package, or otherwise available from club management on request. Rather than making the R&Rs' location "ascertain[able] beyond doubt," the MMAs' vague assertion that the club rules are "published" in some fashion is nothing more than an "oblique reference [that] falls short of [Oklahoma's] demanding standard" for incorporation. *Id*.

Nor do the MMAs sufficiently identify the R&Rs via "words of express incorporation." *Id.* at 553; *see also High Sierra Energy, L.P. v. Hull*, 241 P.3d 1139, 1141 n.3 (Okla. Civ. App. 2010) (finding extrinsic documents incorporated where the contract stated, "Exhibits attached to this Agreement are expressly made a part of, and incorporated by reference into, this Agreement."); *Monkey Island Dev. Auth. v.*

12

*Staten*, 76 P.3d 84, 88 (Okla. Civ. App. 2003) (finding extrinsic documents "attached hereto" were incorporated into a contract).[4] While "neither physical attachment nor magic words are necessary," a contract must nevertheless "clearly and unambiguously state that the parties intended to incorporate any additional terms." *Walker*, 349 P.3d at 553–54. The MMAs—which do not refer to the "club rules" by a proper name, describe their location beyond doubt, or clarify that the reference is to a particular document as opposed to any number of rules disseminated by Tour 18 in whatever form and at whatever time—cannot suffice.

As the Oklahoma Supreme Court reasoned in *Walker*, had Tour 18 "intended to make the [R&Rs] part of the parties' agreement, [Tour 18] could easily have accomplished that purpose by drafting the [MMAs] employing words of express incorporation or clearly referencing, identifying and directing the [Masters Members] to the document to be incorporated." *Id* at 554. It did not do so. Thus, as a matter of Oklahoma law, Tour 18's "vague attempt at incorporation by reference" cannot be recognized. *Id.*

Because Tour 18 offers no other justification for terminating the MMAs, the district court properly vacated the terminations. We now consider Tour 18's objections to the damage award.

---

[4] As the Masters Members point out, Tour 18 knew how to use such words of express incorporation: the paragraph of the MMAs pertaining to escrow states that "[s]aid Escrow Agreement is incorporated and made a part of this agreement as if fully set forth herein." App. at 96.

13

## B. *Summary Judgment - Damages*

Tour 18 contends the district court erred in granting summary judgment to the Masters Members on damages and in failing to order discovery on mitigation. The district court determined "that the losses of each member equaled the value of a monthly membership [at Rose Creek] for the time the Master Membership program was improperly eliminated," App. at 1246, and found no genuine dispute that such monthly value was $350. The district court further saw "no basis for concluding that the failure to pay to play golf elsewhere is a failure to mitigate the losses here." App. at 1249. We agree.

### 1.    Measure of Damages

Oklahoma's general measure of contract damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby." Okla. Stat. tit. 23, § 21. Put differently, the general measure is "the amount that would place the aggrieved party in the position he would have occupied had the breach not occurred." *Sun Ridge Inv'rs, Ltd. v. Parker*, 956 P.2d 876, 878 (Okla. 1998). Damages also must be "clearly ascertainable in both their nature and origin," Okla. Stat. tit. 23, § 21, "in some manner other than by mere speculation, conjecture or surmise, and by reference to some definite standard," *John A. Henry & Co. v. T.G. & Y. Stores Co.*, 941 F.2d 1068, 1071 (10th Cir. 1991) (quoting *Great W. Motor Lines v. Cozard*, 417 P.2d 575, 578 (Okla. 1966)).

By breaching the MMAs, Tour 18 deprived the Masters Members of fifteen months of Rose Creek membership, a time period not in dispute. Accordingly, to put

14

the Masters Members "in the position [they] would have occupied had the breach not occurred," *Parker*, 956 P.2d at 878, Tour 18 must compensate them for the value of fifteen months of Rose Creek membership. "[T]he best measure of the value of [a] broken promise is the value assigned to it by the parties." 24 Williston on Contracts § 64:3 (4th ed. 2019). Here, the parties have assigned a value to Tour 18's broken promise of $350 per month.

The Masters Members point to abundant record evidence showing Tour 18 assessed the value of a Rose Creek membership at $350 per month. First, Tour 18's December 1, 2017, termination letter used Rose Creek's "old family membership rate of $350 per month" to calculate that all Masters Members had "amortized out" of any reimbursement right. App. at 100. Second, Mr. Wilkerson stated in his January 2017 affidavit that "Rose Creek charges monthly dues in the amount of $350.00," and that Tour 18 would lose $210,000 in yearly revenue if the Masters Members "are permitted to play without paying" ($350 x 12 x 50 Masters Members), App. at 1205. Third, Mr. Wilkerson repeated this admission in a February 2017 declaration supporting Tour 18's opposition to the Masters Members' request for injunctive relief: "Tour 18's lost income should an injunction be granted permitting former Master Members free access to the facilities exceeds $210,000.00 per year. . . ." App. at 1235. Thus, as the district court noted, Tour 18's "own representatives provide[d] the necessary evidence regarding the value of each membership." App. at 1249. This evidence satisfies the Masters Members' initial burden regarding the amount of damages. *See Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1218 (10th Cir. 2016)

15

(stating the moving party must make "a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." (quotation marks omitted)).

As the nonmoving party, Tour 18 was then required to come forward with evidence sufficient for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts"). Tour 18 identifies no evidence sufficient to establish a viable alternative valuation for the Rose Creek memberships. Mr. Wilkerson's July 2018 declaration asserting that Masters Memberships have no monthly value is, as observed by the district court, "best characterized as self-serving and an attempt to create an issue of fact where none exists." App. at 1248; *see Burns v. Bd. of Cty. Comm'rs of Jackson Cty.,* 330 F.3d 1275, 1282 (10th Cir. 2003) ("We will disregard a contrary affidavit . . . when it constitutes an attempt to create a sham fact issue." (internal quotation marks omitted)).

Instead, Tour 18 argues that damages should be measured by "the cost of an alternative location to play golf" during the relevant period. Aplt. Br. at 20. This argument finds no basis in Oklahoma law.[5] Moreover, it appears to be premised on a

---

[5] Oklahoma law does contemplate using the "cost of cover" as a measure of damages in contracts for the sale of goods. Okla. Stat. tit. 12A, § 2-712 (allowing buyer to "cover" by procuring substitute goods, then "recover from the seller as damages the difference between the cost of cover and the contract price together with

misunderstanding of the distinction between direct and consequential damages. The Masters Members sought direct damages—those proximately caused by Tour 18's failure to live up to its bargain. *See* 24 Williston § 64:16. The Masters Members expressly did *not* seek consequential damages—those flowing not "directly and immediately from the breach, but only from some of [its] consequences or results," *id.*—such as costs incurred to play golf elsewhere during the termination period. *See* Aple. Br. at 26. As the district court stated, any consequential damages would be *in addition* to those awarded for the value of fifteen months of Rose Creek membership, because "regardless of whether a Master Member chose to golf at another club during the pendency of this litigation, the member was still deprived of each of the benefits of membership set forth in the [MMA]." App. at 1249.

Tour 18 has not shown a genuine issue of material fact regarding the value of fifteen months of Rose Creek membership. The Masters Members proposed, and the district court applied, a "definite standard" for assessing "clearly ascertainable" damages, *John A. Henry & Co.*, 941 F.2d at 1071. That standard was based on Tour 18's own monthly valuation admissions. Tour 18's contradictory, belated assertion that the memberships have no monthly value cannot create a factual dispute. And Tour 18 provides no evidence by which a jury could reach a different assessment of the value of fifteen months of Rose Creek membership.

---

any incidental or consequential damages"). Tour 18 points to no parallel provision for services, however.

## 2. Duty to Mitigate

Finally, Tour 18 argues that the district court erred in granting summary judgment without first allowing discovery on whether the Masters Members attempted to mitigate their damages. "[U]nder Oklahoma law, one is only required to take reasonable actions in mitigation of damages." *Morris v. Sanchez*, 746 P.2d 184, 189 (Okla. 1987) (citing *Smith-Horton Drilling Co. v. Brooks*, 182 P.2d 499, 502 (Okla. 1947)). Tour 18, as the breaching party, bears the burden of proving failure to mitigate. *See Cities Serv. Co. v. Gulf Oil Corp.*, 980 P.2d 116, 134 (Okla. 1999); *Staner v. McGrath*, 51 P.2d 795, 798 (Okla. 1935).

Tour 18 asserts that the Masters Members could have mitigated damages by "pay[ing] to play golf" during the termination period, "either at Rose Creek or elsewhere."[6] Aplt. Reply Br. at 14–15. Tour 18 cannot meet its burden on this issue because it failed to "designate specific facts" that would allow a jury to conclude that pursuing alternate golfing arrangements would have actually mitigated the Masters Members' damages. *Celotex,* 477 U.S. at 324. Specifically, Tour 18 failed to introduce any evidence about the price of available alternatives, and Oklahoma law requires that a defendant "ascribe value to the matters offered in reduction." *Gulf Oil Corp.*, 980 P.2d at 134. "Failure to provide an evidentiary basis for monetarily

---

[6] Parties generally are "not required to enter into a new contract with one who has breached the original agreement even though terms are offered which would result in avoiding the loss." *Home Life Ins. Co. v. Clay*, 773 P.2d 666, 674 (Kan. Ct. App. 1989). *Cf.* 22 Am. Jur. 2d *Damages* § 358 ("The doctrine of avoidable consequences does not, among other circumstances, require one to— . . . purchase, even for a trifle, a right that one already owns.").

appraising the reductions has potential for introducing uncertainty into the jury's ascertainment of the *fact* of the suggested reduction and hence interject impermissible jury speculation into the trial." *Id.*

Without any evidence on the costs of other local golf clubs, the record on summary judgment contains no basis for a jury to conclude that the Masters Members could have obtained cheaper alternatives. *See Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008); *Coen v. SemGroup Energy Partners G.P.*, 310 P.3d 657, 669 (Okla. Civ. App. 2013) (finding that defendant's assertions regarding plaintiff's failure to mitigate were "based on speculation and conjecture" and therefore "insufficient to meet its burden"); *see also* 22 Am. Jur. 2d *Damages* § 346 ("When advancing a claim that the plaintiff failed to mitigate damages, the defendant must prove both that a means of mitigation existed and that the proposed course of mitigation would, in fact, have resulted in a reduction of the plaintiff's damages."). Summary judgment on this issue was proper.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court as to both liability and damages.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

19